**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AMERICAN OUTLAWS ASSOCIATION
d/b/a/ THE OUTLAWS MOTORCYCLE
CLUB, INC.                                          **Civil Action No. _____**

     *Plaintiff*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES, by and through ROBERT
CEKADA in his official capacity as Director of the
BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES; THE DEPARTMENT OF JUSTICE,
by and through TODD BLANCHE, in his official capacity
as Acting Attorney General for the DEPARTMENT OF
JUSTICE; THE JACKSONVILLE SHERIFF'S OFFICE, by
and through SHERIFF T.K. WATERS in his official capacity
as Sheriff of THE JACKSONVILLE SHERIFF'S OFFICE;
and JOHN DOES 1-5

     *Defendants*.

_____/

**COMPLAINT FOR DECLARATORY RELIEF,
INJUNCTIVE RELIEF, ATTORNEYS' FEES, AND COSTS**

COMES NOW, Plaintiff, AMERICAN OUTLAWS ASSOCIATION d/b/a/ THE

OUTLAWS MOTORCYCLE CLUB, INC, by and through the undersigned counsel, and hereby

files this Complaint for Declaratory Relief, Injunctive Relief, Attorney's Fees, and Costs against

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, by and through

ROBERT CEKADA in his official capacity as Director of the BUREAU OF ALCOHOL,

TOBACCO, FIREARMS AND EXPLOSIVES; THE DEPARTMENT OF JUSTICE, by and

through TODD BLANCHE, in his official capacity as Acting Attorney General for the

1

DEPARTMENT OF  JUSTICE; THE JACKSONVILLE SHERIFF'S OFFICE, by and through SHERIFF T.K. WATERS; and JOHN DOES 1-5, and in support thereof would state as follows:

## INTRODUCTION

1.       This is a civil action wherein Plaintiff, American Outlaws Association d/b/a/ The Outlaws Motorcycle Club, Inc., prays for a declaratory judgment and both a preliminary and permanent injunction to restrain and enjoin the named Defendants, as well as their agents, employees, and representatives, from depriving Plaintiff and its members of the rights, privileges, and immunities secured by the United States Constitution.  In particular, Defendants' seizure of expressive materials from Plaintiff's clubhouse without any limitation, or any connection to any criminality was unconstitutional under the First Amendment. Additionally, Defendants' blanket seizure of firearms, swords, and knives from Plaintiff's clubhouse, without any limitation, or any connection to any criminality was unconstitutional under the Second Amendment, and because the warrant authorizing the seizure was deficient on its face, execution of the warrant also violated Florida Statute § 790.33.  In addition to injunctive relief, Plaintiff seeks attorneys' fees, costs, and any other relief this Court deems just and proper.

## PARTIES

2.       Plaintiff American Outlaws Association d/b/a/ The Outlaws Motorcycle Club, Inc. ("Association"), is a corporation organized under the laws of the State of Delaware, with a clubhouse located at 9371 Holland Street, Jacksonville, Florida 32211 ("Clubhouse").

3.       Upon information and belief, Defendant Department of Justice ("DOJ") by and through Todd Blanche, in his official capacity as Acting Attorney General for the DOJ, is a department of the executive branch of the United States government with offices located within this District.

4.      Upon information and belief, Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") by and through Robert Cekada in his official capacity as Director of the ATF, is a component of the DOJ with offices with located within this District.

5.      Upon information and belief, Defendant Jacksonville Sheriff's Office, by and through Sheriff T.K. Waters in his official capacity as  Sheriff of The Jacksonville Sheriff's Office, is a consolidated agency of the City of Jacksonville "Jacksonville" and County of Duval located in the State of Florida ("Florida") with offices located in this District at 501 E. Bay Street, Jacksonville, Florida 32202.

6.      Upon information and belief, Defendants John Does 1-5 are local and state law enforcement agencies and individuals who participated in execution of a warrant at the Clubhouse and have offices located within this District.

## JURISDICTION AND VENUE

7.      This action arises under the First and Second Amendments to the U.S. Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under 42 U.S.C. §§ 1983 and 1988 as it applies to Florida law enforcement agencies, employees, agents, and representatives.

8.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and the First and Second Amendments to the U.S. Constitution.

9.      This action also seeks to secure the rights of Plaintiff and its members under Florida Statute § 790.33, which this Court has jurisdiction to entertain under 28 U.S.C. § 1367.

10.     This Court has authority to issue the requested relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, or in the alternatives, Rule 41(g) of the Federal Rules of Criminal Procedure, and also

3

has authority under Florida Statute § 790.33, and 42 U.S.C. §§ 1983 and 1988 as applied to Florida law enforcement agencies, employees, agents and representatives.

11.     Subject matter jurisdiction exists under Article III because Plaintiff and its members have suffered and will continue to suffer injuries-in-fact; there is a sufficient causal connection between Plaintiff's injuries and Defendants' actions; and a favorable decision from this Court granting Plaintiff relief will redress those injuries.

12.     This dispute is ripe because Plaintiff's rights are being violated, and Plaintiff will suffer further imminent invasions of those rights in the absence of relief from this Court.

13.     Personal jurisdiction is proper in this Court because all of the Defendants reside in this District.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e). Plaintiff and all Defendants reside in this District, and the events giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

*I.     The Association and its members engage in protected expression.*

15.     The Association is an international fraternal organization of motorcycling enthusiasts that was founded in 1965. The Association's domestic entity, The Outlaws Motorcycle Club, Inc., is registered with the Internal Revenue Service as a nonprofit corporation. The Association's name and symbols are trademark-protected, consisting of the words "Outlaw MC" and the image of "a human skull positioned in front of a pair of crossed pistons."  (*See* U.S.P.T.O. Trademark Search Result, available at https://tmsearch.uspto.gov/search/search-results/8504907) (last visited Apr. 27, 2026).

16.     The Association and its members are passionate about motorcycling, travel, fraternity, and motorcycling culture and history. Although members have jobs and families, they

spend significant time riding their motorcycles together around the country, visiting clubhouses, attending funerals and parties, and living a life that has been romanticized in books and movies for generations.

17.     The Association's members define their organization as a "1%er" brotherhood, meaning that its members are passionately committed to "Biking and Brotherhood."  Its members are unapologetic about their anti-mainstream, and anti-establishment views. They express these views through display of various symbols, such the Association's trademarked symbols, symbols incorporating the phrase "1%er," and other non-motorcycling specific symbols. Some members even design and create their own patches.  Moreover, they exercise their right to associate by organizing and participating in motorcycle rides and rallies across the country.

18.     None of this is a secret. The Association does not hide its views from anyone. The website proudly discusses its history, culture, ideology, slogans ("God forgives, Outlaws don't"), symbols, logos, and locations. *See* American Outlaws Association, www.outlawsmcworld.com (last visited April 23, 2026).

19.     The American Outlaws Association acknowledges that during its 60-year existence, some members have been arrested and convicted of serious crimes. However, the conduct of those members is limited to those members. That conduct is not synonymous with membership. There are far more law-abiding members than non-law-abiding members.

**II.     *The Constitutional rights of the Association and its members are under attack from unconstitutional interference by Defendants.***

20.     On March 13, 2026, law enforcement obtained a search Warrant ("Warrant")[1] to search the "Residence located at 9371 Holland Street, Jacksonville, Florida," *i.e.,* the Clubhouse, no later than March 27, 2026. The Warrant states that there was "probable cause" that such search will reveal "evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1959 (Violent Crime in Aid of Racketeering), and 1962 (Racketeering Conspiracy), beginning from an unknown time but, not later than January 2026." The Warrant identified the "TARGET LOCATION" as "a main structure with multiple smaller structures situated on the property." The main structure displayed the "Outlaws logo" and the words "Outlaws Jacksonville." (*Id*.) The Warrant authorized seizure of the following items:

> 1. Any and all records, documents, or materials that show association with the Outlaws, to include but not limited to written or electronic versions of the Outlaws bylaws, membership rosters/lists, contact lists, financial records, and merchandise bearing the Outlaws patch or logo;
>
> 2. Photographs of members showing proof of association with the enterprise, including association with other members, symbols, or insignia;
>
> 3. Indicia of ideology of the enterprise, such as swastikas, confederate flags, photographs of white supremist leaders, and books on white supremacist philosophy;
>
> 4. Clothing and other merchandise bearing the name "Outlaws" or bearing the logo of the enterprise – a skull with crossed pistons;
>
> 5. Cellular telephones;
>
> 6. Weapons, to include firearms, ammunition, knives, and swords; and

---

[1] Based on the fact that the Warrant contains matters that may still be under seal, the Warrant will not be attached to this Complaint as an Exhibit; however, it will be provided to the Court under appropriate circumstances and is incorporated herein by reference.

7. Evidence of possession, control, or ownership of the TARGET RESIDENCE, including photographs, identification cards, mail, leasing, or mortgage documents and bills or invoices.

8. Personal property of R.S. and CC, including clothing, firearm, wallet, and phone;

9. DVR system, cameras, and digital storage devices; and

10. All items featuring Outlaws insignia and imagery.

21. Subsequently, law enforcement officers executed the Warrant, leaving a copy of it at the Clubhouse. On that day, law enforcement officers seized expressive materials, firearms, swords, and knives, among other items.

22. Upon information and belief, employees, agents, and representatives of Defendants ATF, DOJ, Jacksonville Sheriff's Office, and John Does 1-5 participated in execution of the Warrant at the Clubhouse.

23. No arrests were made.

24. Of note, the Warrant was not the first time the Clubhouse was subjected to execution of a seizure warrant that violated federal and state law. On June 16, 2022, Defendant Jacksonville Sheriff's Office obtained and executed a warrant ("2022 Warrant"). The 2022 Warrant[2] authorized seizure of any and all electronic devices and electronic storage devices without identifying the devices to be seized or their connection to criminality. It also authorized the seizure of certain firearms. Upon information and belief, employees, agents, and representatives of Defendant Jacksonville Sheriff's Office and John Does 1-5 seized large quantities of expressive materials unrelated to crime because they seized electronic devices and

---

[2] Based on the fact that the 2022 Warrant contains matters that may still be under seal, the 2022 Warrant will not be attached to this Complaint as an Exhibit; however, it will be provided to the Court under appropriate circumstances and is incorporated herein by reference.

electronic storage devices such as computers, hard drives, videos, etc., known to contain expressive materials unrelated to crime, as well as firearms.

25.     No arrests were made.

26.     The execution of the Warrant, and the earlier execution of the 2022 Warrant, establish a custom and practice of Defendants' violation of the Association's constitutional rights.

27.     Upon information and belief, Jeremy Scheetz, an employee with Defendant ATF, was involved with obtaining both the Warrant and the 2022 Warrant. Critically, on May 28, 2026, Mr. Scheetz testified that he is the sole expert on motorcycle clubs for the federal government, that he participates in obtaining warrants, and that he participates in investigations of the Association and its members, including the Jacksonville Clubhouse. Mr. Scheetz testified under oath about various opinions he holds concerning the Outlaws and its members, but on the most critical issues, such as organized violence against cooperators, connections between various motorcycle clubs, the issuance of orders to engage in violence, and the purported culture of violence against women, he was unable to provide any relevant data to support his claims.  Subsequently, the government dismissed murder charges that had been pending against a member of the Association and others for more than two years.

28.     To the extent that the issuing Judge who authorized either the Warrant or the 2022 Warrant relied upon Mr. Scheetz's unsupported opinions about the Association and its members, the Warrant and/or 2022 Warrant are based upon unsupportable accusations.

29.     The Association has standing to bring claims on behalf of its members because (i) its members would otherwise have standing to sue in their own right; (ii) the interests the Association seeks to protect are germane to the organization's purpose; and (iii) neither the claims asserted nor the relief sought require the participation of individual members in the lawsuit.

## CAUSES OF ACTION

**Count 1:    Declaratory relief, injunctive relief, and attorneys' fees and costs because the seizure of protected expression from the Association and its members violated the First Amendment as asserted against all Defendants.**

30.    Plaintiff incorporates by reference paragraphs 1-28 above as though fully set forth herein.

31.    The United States Constitution provides an enforceable right, among other rights, to be free from discriminatory governmental action that violates the First Amendment of the United States Constitution.

32.     Plaintiff and its members are engaged in protected expression, both inside and outside the Clubhouse in the form of displaying flags and signs bearing the Association's trademarked symbol, wearing clothing displaying the Association's trademarked symbol as well as other symbols, possessing and reading books on anti-establishment ideology. Further, the Association and its members exercise their right to associate by meeting at the Clubhouse, wearing or displaying items that contain the Association's trademarked name and symbol, displaying photographs of events involving members, and maintaining documents concerning the Association's history and operations.

33.    ***Blanket seizure of protected expression without an adversary hearing is an unlawful prior restraint***. The Warrant authorized the blanket seizure of expressive materials prior to an adversary hearing as to whether the particular materials fell into one of the limited and narrow categories of speech outside the protection of the First Amendment which violated the First Amendment. The Warrant states that there is "probable cause" to believe that the expressive materials are "evidence, fruits, and instrumentalities" of criminal conduct, but the government bears a very heavy burden as to establishing proof of a connection to criminality as to each instance

of expressive material through an adversary hearing prior to removing expressive materials from circulation. There was no adversary hearing prior to removal of the expressive materials from circulation, which violated the First Amendment.

34. ***Presumptively invalid content-based and viewpoint-based seizure of expressive materials.*** The Warrant authorized the blanket seizure of expressive materials on the basis of the content conveyed by the materials, which is an unconstitutional content-based restriction on speech that cannot survive strict scrutiny. Additionally, the Warrant authorized the blanket seizure of expressive materials on the basis of the viewpoint conveyed by the materials, which is a per se unlawful viewpoint-based restriction on expressive materials that cannot withstand scrutiny of any kind.

35. ***Overbroad***. The Warrant authorized the blanket seizure of expressive materials. In doing so, the Warrant reached a substantial number of impermissible applications relative to whatever its legitimate sweep may have been. The seized expressive materials are incapable of committing or facilitating criminality of any kind. For example, there is no basis to belief that books on ideology could possibly be "evidence, fruit, and instrumentalities" of crime, yet the Warrant authorized the seizure of such expressive materials. Further, the face of the Warrant provides no basis for law enforcement officers executing the Warrant to distinguish between instances of speech that are "evidence, fruit, and instrumentalities" of crime and those that are not.

36. ***Right to associate violated***. The Warrant violates the rights of individuals to associate with the Association and its members in two ways. First, the Warrant restricts the Association's and members' speech by depriving the Association and its members of the ability to display and wear Association-related trademarked name and symbol. Second, the Warrant

authorizes the seizure of photographs of members wearing clothing displaying the Association's trademarked name and symbol, member lists, and the Association's financial information.

37.    Additionally, the 2022 Warrant authorized the seizure of expressive materials stored on electronic devices without any connection to criminality, without an adversary hearing, and without any limitation on the materials to be seized, simply because the devices were owned by the Association or its members, which also violates the First Amendment.

38.    By reason of the foregoing, Plaintiff is entitled to a judgment declaring that the Defendants violated, and continue to violate, Plaintiff's First Amendment rights.

**Count 2:    Declaratory relief, injunctive relief, and attorneys' fees and costs because the Defendants denied Plaintiff and its members their rights under the Second Amendment as asserted against all Defendants.**

39.    Plaintiff incorporates by reference paragraphs 1-28 above as though fully set forth herein.

40.    The United States Constitution secures, among other enforceable rights, the right to be free from governmental action that violates the Second Amendment.

41.    The Warrant authorized the blanket seizure of every firearm, sword, and knife at the Clubhouse. The description of firearms, swords, and knives to be seized must be as specific as the circumstances allow, and if firearms are connected to the criminal activity under investigation, they must be reasonably identified in the warrant. Accordingly, when firearms are purportedly related to the offense under investigation, the warrant should reasonably identify the firearms sought—such as by type, make, model, caliber, serial number, or other distinguishing characteristics when known—rather than authorizing the blanket seizure of all firearms without a demonstrated nexus to the alleged criminal conduct.  Likewise, when swords and knives are purportedly related to the offense under investigation the warrant should reasonably identify the

11

bladed weapons sought-such as by type, overall length, blade length, blade shape, color, manufacturer, model, serial number (if any), and distinguishing markings.

42. Upon information and belief, Defendants or their employees, agents, or representatives seized firearms and other arms for which members lawfully possessed and which had no connection to criminality.

43. The blanket seizure of all firearms, swords, and knives in executing the Warrant violates the Second Amendment.

44. Upon information and belief, Defendant Jacksonville Sheriff's Office and John Does 1-5 may have exceeded the scope of the seizure authorized by the 2022 Warrant by seizing firearms, swords, and knives without any connection to criminality which also violated the Second Amendment.

**Count 3:** **Declaratory relief, injunctive relief, and attorneys' fees and costs because Defendants Jacksonville Sheriff's Office, and Defendants John Does 1-5 participation in the unlawful seizure of Plaintiff's and its members lawfully possessed firearms violated Florida Statute § 790.33.**

45. Plaintiff incorporates by reference paragraphs 1-28 above as though fully set forth herein.

46. The Florida Legislature has expressly occupied the entire field of regulation of firearms and ammunition pursuant to § 790.33, Florida Statutes, thereby preempting local governmental entities and agencies from regulating, restricting, or otherwise interfering with firearm rights except as expressly authorized by state law. The Statute further provides a cause of action for declaratory and injunctive relief, damages, and attorney's fees against local governmental entities and officials whose conduct violates the Legislature's express preemption of the field.

47. Because Florida has reserved authority over firearms to the State, any governmental seizure, confiscation, retention, or deprivation of firearms must be authorized by a valid source of law. Defendants Jacksonville Sheriff's Office and John Does 1-5 assisted the ATF and other federal agencies in the unlawful seizure of firearms from Plaintiff's members pursuant to the Warrant, which was facially invalid and constitutionally defective under the First, Second, and Fourth Amendments to the U.S. Constitution and Article I, Section 12 of the Florida Constitution. As a result, the Warrant was void ab initio and conferred no lawful authority upon Defendants to assist federal agencies to seize, retain, or otherwise interfere with Plaintiff's members' firearms.

48. Absent a valid warrant or other lawful statutory authority, Defendants Jacksonville Sheriff's Office, and John Does 1-5 possessed no legal basis under either Florida law or federal law to deprive Plaintiff's members of the possession, use, and enjoyment of lawfully owned firearms. The seizure therefore constituted an unauthorized exercise of governmental power over firearms and exceeded any authority granted to Defendants by the Florida Legislature.

49. Florida's comprehensive firearm preemption scheme does not authorize local governmental entities to deprive, or assist federal agencies in depriving, citizens of firearms except pursuant to lawful authority recognized by state law and the Constitution. Where a purported seizure is predicated upon a warrant that is void ab initio, local officials possess no lawful authority to participate in, facilitate, or assist the confiscation of firearms. Any such participation exceeds the authority delegated by the Florida Legislature and constitutes an ultra vires exercise of governmental power in contravention of § 790.33, Florida Statutes.

50. By exercising authority over Plaintiff's members' firearms without lawful authorization, Defendants Jacksonville Sheriff's Office, and John Does 1-5, acted contrary to the requirements and public policy embodied in § 790.33, Florida Statutes, causing Plaintiff damages

13

and entitling Plaintiff to declaratory and injunctive relief, compensatory damages, attorneys' fees, costs, and such further relief as the Court deems just and proper.

51.     Upon information and belief, Defendants Jacksonville Sheriff's Office and John Does 1-5 executed the 2022 Warrant in a manner that exceeded the scope of the 2022 Warrant, thereby seizing firearms not subject to the 2022 Warrant which also violated Florida Statute § 790.33 because Defendants lacked authority for the seizures.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant relief to Plaintiff and against Defendants as follows:

A.     Finding and declaring that the Warrant violated the First Amendment;

B.     Finding and declaring that the Warrant violated the Second Amendment;

C.     Finding and declaring that the Warrant violated Florida Statute § 790.33;

D.     Finding and declaring that the 2022 Warrant violated the First Amendment;

E.     Finding and declaring that the 2022 Warrant violated the Second Amendment;

F.     Finding and declaring that the 2022 Warrant violated Florida Statute § 790.33;

G.     Ordering the return of any property obtained in violation of the First or Second Amendments or Florida Statute § 790.33 from execution of the Warrant and/or the 2022 Warrant;

H.     Enjoining Defendants and their employees, agents, and representatives, as well as all persons acting for or on their behalf, from enforcing Warrants that violate the First and Second Amendments or Florida Statute § 790.33;

I.     Awarding Plaintiff its attorney fees and costs under 28 U.S.C. § 2412, 42 U.S.C. § 1988; and Florida Stat. § 790.33; and

J.     Awarding such further and additional relief that the Court deems just and proper.

14

Dated: June 12, 2026.                              Respectfully submitted,


                                                   /s/ Luke C. Lirot

                                                   Luke C. Lirot, Esq.
                                                   **LAW OFFICES OF LUKE CHARLES LIROT, P.A.**
                                                   Florida Bar Number 714836
                                                   Rachel Ricks, Esq.
                                                   Florida Bar Number 1049469
                                                   2240 Belleair Rd., Suite 190
                                                   Clearwater, Florida 33764
                                                   Phone: (727) 536-2100
                                                   Email: Luke2@lirotlaw.com
                                                           rachel@lirotlaw.com
                                                           team@lirotlaw.com

                                                   Erin McCampbell Paris, Esq.*
                                                   **MAURICE WUTSCHER, LLP**
                                                   New York Bar Number 4480166
                                                   50 Fountain Plaza, Suite 1400
                                                   Buffalo, New York 14202
                                                   Phone: (716) 261-4703
                                                   E-mail: eparis@mauricewutscher.com
                                                   *Subject to pro hac vice admission*

                                                   Noel H. Flasterstein, Esq.
                                                   **NOEL H. FLASTERSTEIN, P.A.**
                                                   Florida Bar Number 189553
                                                   2801 Greene St., Suite 10
                                                   Hollywood, Florida 33020
                                                   Phone: (813) 919-7400
                                                   E-mail:  noel@flgunlaw.com
                                                   *Attorneys for American Outlaws Association*
                                                   *d/b/a/ The Outlaws Motorcycle Club, Inc.*


\*       Pro hac vice application to be submitted forthwith


15