UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMERICAN OUTLAWS ASSOCIATION d/b/a THE OUTLAWS MOTORCYCLE CLUB, INC.,

      Plaintiff,

v.

                                  Case No. 3:26-cv-01549-WWB-SJH

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, by and through ROBERT CEKADA in his official capacity as Director of the BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.

      Defendants.

_____/

## <u>RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION</u>

Defendants the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Department of Justice ("DOJ") (collectively, the "Federal Defendants"), through undersigned counsel, respond to Plaintiff's Motion for Preliminary Injunction (Doc. 15), which seeks an order directing the return of all items recently seized pursuant to a search warrant, and seeks to enjoin future searches. Federal Defendants oppose the Motion—which requests the same relief as the Complaint (Doc. 1)—and request the Court dismiss this case outright.

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be

suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16 (2020). The balance-of-harms and public-interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "A preliminary injunction is an extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations omitted). The moving party's failure to demonstrate a single element may defeat the request regardless of the party's ability to establish any of the other elements. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (failure to show irreparable injury); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (failure to establish substantial likelihood of success on the merits).

The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990)). Here, Outlaws does not seek to maintain the status quo. Rather, it seeks to obtain the identical relief it ultimately pursues in this

2

action. But a motion for preliminary injunction is not appropriately used as a vehicle for final relief on the merits. *Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308, 1314 (1985); *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

## ARGUMENT

### I.      The Court Lacks Jurisdiction Over This Action.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994) (internal citations omitted). Because federal courts lack general jurisdiction, it "is to be presumed that a cause lies outside" the courts' "limited jurisdiction." *Id.* at 377. The "burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

Exercises of equitable jurisdiction should be "exceptional" and "anomalous." *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974).[1] Circuit precedent has limited equitable jurisdiction with a four-factor test set out in *Richey v. Smith*, 515

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all published cases of the former Fifth Circuit decided prior to the close of business on September 30, 1981).

F.2d 1239, 1243-44 (5th Cir. 1975). As discussed below, Outlaws cannot meet that test. Therefore, the Court lacks jurisdiction over this matter, and should dismiss this action outright. *See Munaf v. Geren*, 553 U.S. 674, 691 (2008) ("Adjudication of the merits is most appropriate if the injunction rests on a question of law and it is plain that the plaintiff cannot prevail. In such cases, the defendant is entitled to judgment.").

## II.    Outlaws Cannot Establish a Likelihood of Success on the Merits.

The first factor for obtaining a preliminary injunction is the most important, and "[w]here a court concludes that the movant fails to establish a substantial likelihood of success on the merits," it need not reach the remaining considerations. *Barber v. Governor of Ala.*, 73 F.4th 1306, 1317 (11th Cir. 2023).

### A.    Outlaws Lacks Article III Standing.

"A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, (2008) (citations and quotations omitted). He does so by establishing that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

#### 1.    Outlaws Lacks Organizational Standing.

An organizational plaintiff has standing to enforce the rights of its members "when its members would otherwise have standing to sue in their own right, the

4

interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Although organizational plaintiffs need not establish that all their members are in danger of suffering an injury, they must "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). *See also Georgia Rep. Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204-05 (The Eleventh Circuit has "not relax[ed] the requirement that an organization name at least one member who can establish an actual or imminent injury."). Although Outlaws submits a declaration from Patrick M. Locklear, nothing in the declaration identifies what, if any, harm he has suffered or will suffer absent relief in this matter. This failure is fatal to Outlaws' organizational standing. Thus, the Court lacks jurisdiction.

### 2. Outlaws Lacks Standing to Pursue Prospective Relief for Future Warrants.

Outlaws further fails to establish standing with respect to its request for prospective relief in the form of an injunction barring enforcement of future warrants that purportedly violate the First or Second Amendments. Standing "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1 (2025) (Kavanaugh, J., concurring in grant of application for stay) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95

(1983)). A plaintiff must demonstrate a "real and immediate threat of repeated injury[,]" *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), and may not rely on a "speculative chain of possibilities[,]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

The Supreme Court's decision in *Lyons* illustrates these principles. There, police officers stopped the plaintiff for a traffic violation, seized him, and placed him in a chokehold. 461 U.S. at 97. The Court held that the plaintiff had not shown that "he was likely to suffer future injury from the use of the chokeholds" because no "immediate threat" existed that the plaintiff would be subjected to another chokehold "without any provocation or resistance on his part"—even though the police department allegedly had a policy of "routinely apply[ing] chokeholds in situations where they are not threatened by the use of deadly force." *Id.* at 105. *Lyons* and its progeny foreclose Outlaws' standing to pursue prospective relief for future warrants that are purportedly unconstitutional.

### B.    Even if Outlaws Had Standing, It Is Unlikely to Prevail on the Merits of Its Claims.

Under Fed. R. Crim. P. 41(g):

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

6

When a party invokes Rule 41(g) before the initiation of any civil or criminal proceedings, the motion for return of property is treated as a civil action in equity. *Richey*, 515 F.2d at 1245. Notably, the Eleventh Circuit Court of Appeals has held that a district court should invoke its equitable jurisdiction only under the "narrowest" circumstances and that "[e]xercises of equitable jurisdiction . . . should be exceptional and anomalous." *Trump v. United States*, 54 F.4th 689, 694, 697 (11th Cir. 2022). The burden of establishing this "exceptional and anomalous" jurisdiction "rests upon the party asserting jurisdiction." *Trump*, 54 F.4th at 694, 697.

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943). The Eleventh Circuit has "developed an exacting test for exercising equitable jurisdiction over suits flowing from the seizure of property." *Trump*, 54 F.4th at 697. Under the test set forth in *Richey v. Smith*, a district court considers four factors when deciding whether to grant a pre-indictment motion for return of property: (1) "whether the motion for return of property accurately alleges that government agents . . . displayed 'a callous disregard for the constitutional rights of [the moving party]"; (2) "whether the plaintiff has an individual interest in and need for the material whose return he seeks"; (3) "whether the plaintiff would be irreparably injured by denial of the return of the property"; and (4) "whether the plaintiff has an adequate remedy at law for the redress of his grievance." 515 F.2d at 1243-44

(internal citations and footnotes omitted). "Enveloping" those "are the basic equitable considerations of whether the [movant's] conduct and the merits of his position require judicial review to prevent manifest injustice." *In re Matter of $65,470*, 901 F.2d 1540, 1545 (11th Cir. 1990). The Eleventh Circuit has emphasized "again and again that equitable jurisdiction exists only in response to the most callous disregard of constitutional rights, and even then only if other factors make it clear that judicial oversight is absolutely necessary." *Trump*, 54 F.4th at 698.

> ### 1. Outlaws Fails to Meet Its Burden to Establish Callous Disregard of the First or Second Amendment Rights of Any Members.

"Callous disregard" is the "foremost consideration" for a court when deciding whether it may exercise equitable jurisdiction in the present context. *Trump*, 54 F.4th at 698 (quoting *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977)). When considering this factor, Eleventh Circuit precedent emphasizes the "indispensability of an 'accurate allegation' of 'callous disregard.'" *Id.* (quoting *Richey*, 515 F.2d at 1243) (alteration adopted); *see also Hunsucker*, 497 F.2d at 34 n.10 (collecting cases). Absent that, courts rightly will not intervene in an ongoing investigation. Because the vast majority of subjects of a search warrant have not experienced a "callous disregard" of their constitutional rights, this factor ensures that equitable jurisdiction remains extraordinary. Otherwise, "a flood of disruptive civil litigation" would surely follow. *Deaver v. Seymour*, 822 F.2d 66, 71

(D.C. Cir. 1987). This restraint guards against needless judicial intrusion into the course of criminal investigations—a sphere of power committed to the executive branch.

When the Government suspects criminal activity, the nature of which is a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), any evidence relevant to prove any element of the RICO offense is subject to seizure. Here, a federal magistrate judge determined that there was probable cause to search a specific residence and to seize certain items evidencing violations of 18 U.S.C. §§ 1959 (Violent Crime in Aid of Racketeering) and 1962 (Racketeering Conspiracy), including records showing association with Outlaws, indicia of the ideology of the enterprise, cellular phones, weapons, evidence of possession or ownership of the residence, personal property belonging to several individuals, DVR systems, cameras, and digital storage devices, and items featuring Outlaws insignia. *See* Doc. 17-1, Search Warrant signed by Hon. Natalie H. Adams on March 13, 2026. Notably, Outlaws does not argue that the Government lacked probable cause. Rather, it argues that federal warrant violates its First Amendment rights because it permits seizure of "items of protected expression[,]" Doc. 15 at 9, and argues that the federal warrant restricts its members' "speech and expression concerning the Association by depriving member of the ability to wear and display Association-related symbols and clothing," *id.* at 16, and violates its members' right to privacy by "interfering with the right to 'privacy in own's associations[,]'" *id.* at 17.

Outlaws further argues that the federal warrant violated its members' Second Amendment rights because it authorized "the blanket seizure of every firearm, knife and sword found in the Clubhouse regardless of proof of ownership, permits, or nexus to crime[.]" *Id.* at 18-19. The Complaint and Motion fail to establish a callous disregard of the constitutional rights of Outlaws or its members.

### i.   The Federal Warrant Does Not Violate Any Member's First Amendment Rights.

It is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Under that statute, Congress has made association with an enterprise one element of the RICO offense. *See United States v. Turkette*, 452 U.S. 576, 583 (1981). That element has withstood the attack that it unconstitutionally punishes associational status with the courts recognizing that RICO's "proscriptions are directed against conduct, not status." *United States v. Martino*, 648 F.2d 367, 380 (5th Cir. 1981), *on reconsideration in part sub nom. United States v. Holt*, 650 F.2d 651 (5th Cir. 1981), and *on reh'g,* 681 F.2d 952 (5th Cir. 1982), *aff'd sub nom. Russello v. United States*, 464 U.S. 16 (1983) (quoting *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978)). Evidence of association is subject to seizure, as is evidence of the existence of the enterprise and evidence of the pattern of racketeering activity. *See, e.g., United States v.*

10

*Wolfe*, No. 2:09-CR-00222-42, 2010 WL 11530893, at *1 (S.D.W. Va. June 28, 2010) ("These freedom of association concerns do not prohibit indicia warrants, nor do they substantively alter the standards for issuing and executing warrants."); *United States v. Killip*, 819 F.2d 1542, 1550 (10th Cir. 1987) (holding that warrant seeking indicia of membership in Outlaws Motorcycle Club was supported by probable cause and evidence obtained pursuant thereto was admissible in RICO prosecutions), *abrogated on other grounds by Musacchio v. United States*, 577 U.S. 237 (2016). "It would be anomalous indeed if the associational element of RICO were to remain forever unsatisfied on the basis that an otherwise constitutional search warrant could never issue because it would violate the RICO suspect's First Amendment right to free association." *United States v. Rubio*, 727 F.2d 786, 792 (9th Cir. 1983). The federal warrant signed by Judge Adams, which permitted the seizure of evidence establishing the existence of an enterprise and of the agreement of individuals to associate with that enterprise, did not violate any member's First Amendment rights, much less callously disregard them.

### ii.     The Federal Warrant Does Not Violate Any Member's Second Amendment Rights.

Outlaws fails to identify any regulation of or infringement on its members' Second Amendment rights. The Second Amendment protects the right to keep and bear arms in general; it does not protect the right to possess specific firearms confiscated by law enforcement subject to a warrant supported by probable

11

cause.[2] And the warrant was not required to specifically identify each gun, knife or sword to be seized. Rather, a warrant must particularly describe "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Regarding items to be seized, "[a] description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). "Elaborate specificity is unnecessary." *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982).

Courts have consistently rejected arguments that the seizure of firearms pursuant to a valid warrant violates the Second Amendment. "Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such." *Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020); *Crook v. San Bernardino Cnty. Sheriff's Dep't*, No. 5:22-CV-00010-JVS-SP, 2023 WL 8100579, at *7 (C.D. Cal. Sept. 30,

---

[2] Neither the Complaint nor the Motion challenges the federal warrant on Fourth Amendment grounds. This is perhaps because Fourth Amendment rights are personal, and only individuals who actually enjoy the reasonable expectation of privacy may challenge the validity of a government search. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 143 (1978); *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). An individual has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). Outlaws has not asserted facts sufficient to establish it has standing to bring a Fourth Amendment challenge related to the search of the residence at issue.

2023), *report and recommendation adopted,* No. 5:22-CV-00010-JVS-SP, 2023 WL 8091857 (C.D. Cal. Nov. 21, 2023) (rejecting argument that seizure of firearms violated the plaintiff's Second Amendment rights, because "the Second Amendment is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.") (internal quotation marks omitted); *Pierner-Lytge v. Mitchell*, 412 F. Supp. 3d 1012, 1020 (E.D. Wis. 2019) (finding no support for the "theory that seizure and temporary retention of individual's firearms can constitute a Second Amendment violation, even if done repeatedly."); *Rodgers v. Knight*, 781 F.3d 932, 941 (8th Cir. 2015) ("Lawful seizure and retention of firearms, however, does not violate the Second Amendment."); *Bane v. City of Philadelphia*, No. CIV.A. 09-2798, 2009 WL 6614992, at *10 (E.D. Pa. June 18, 2010) ("Here, [p]laintiff's Second Amendment argument is misplaced. . . . No government official is barring [p]laintiff from obtaining a firearm and none is preventing [p]laintiff from availing himself of the procedure for the return of his firearm. Moreover, no law has been cited that infringes upon [p]laintiff's right to obtain a firearm. The Second Amendment does not bar police from seizing the items taken in this case.")

To the extent Outlaws argues that the seizure of *all* firearms or many weapons from the clubhouse was a Second Amendment violation, it is a distinction without a difference. In *Frein v. Pennsylvania State Police*, 530 F. Supp. 3d 526, 533 (M.D. Pa. 2021), *aff'd,* 47 F.4th 247 (3d Cir. 2022), the district court rejected

13

an argument that the seizure of all of the plaintiffs' firearms, including those which did not match the weapon used in the shooting, deprived them of weapons for self-defense and infringed upon their right to keep arms. The district court stated that "whether the defendants seized one weapon or forty-six, their actions do not impose a burden on plaintiffs' right to keep and bear arms generally, but rather only their right to bear the particular weapons that were seized." *Id*. at 533.[3] Here, the weapons were seized pursuant to a federal warrant supported by probable cause. The seizure of firearms, knives and swords pursuant to the federal warrant did not violate or callously disregard the Outlaws' Second Amendment rights.

## 2. Outlaws Fails to Meet its Burden to Establish a Possessory Interest in and Need for the Seized Items.

A motion for return of property can only be brought by the owner of property who must show a "possessory interest in the property seized" and "clean hands." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). *Cf. United States v. Cooper*, 485 F. App'x 411, 414 (11th Cir. 2012) (Article III standing to contest forfeiture depends on possessory interest, distinguishing between ownership and a lesser possessory interest); *United States v. Foster*, 635 F. App'x 818, 822 n.3 (11th Cir. 2015) ("We note that to the extent Foster alleges that the seized pistol

---

[3] While many courts reject a Second Amendment claim on the basis that the firearms were seized as the result of a valid warrant, other courts have also noted that to establish a Second Amendment claim, a plaintiff "must show that he has been kept from acquiring any other legal firearms." *Aikens v. Bond*, No. CV 21-381-RGA, 2021 WL 5051134, at *4 (D. Del. Nov. 1, 2021). Outlaws has not alleged that any member has been kept from acquiring other firearms or weapons.

14

belonged to his wife, rather than to him, and that he seeks its return on her behalf, he lacks Article III standing."). And courts that have authorized equitable jurisdiction have emphasized the importance of identifying "specific" documents and explaining the harm from their "seizure and retention." *Trump*, 54 F.4th at 699 (citing *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021)).

Here, it is unclear which items the Outlaws national group is asserting a possessory interest in on behalf of its members. *Matter of Search of Clubhouse Compound of Outlaws Motorcycle Club, located at 9371 Holland St., Jacksonville, Duval Cnty., Fla.*, No. 3:06-MJ-1099-HTS, 2016 WL 11121072 (M.D. Fla. Apr. 7, 2016) (denying Rule 41(g) motion without prejudice where it was not clear what items movant was contending he had a possessory interest in); *Matter of Search of Clubhouse Compound of Outlaws Motorcycle Club, located at 9371 Holland St., Jacksonville, Duval Cnty., Fla.*, No. 3:09-MC-27-J-32PDB, 2017 WL 8809567 (M.D. Fla. Oct. 6, 2017), *report and recommendation adopted,* 2018 WL 1832894 (M.D. Fla. Feb. 5, 2018) (club's traditions are irrelevant to property interest analysis). Outlaws fails to identify any specific items it seeks to have returned and fails to explain the harm imposed on it or its members while the Government retains the seized materials while it continues its investigation. *Times Publ'g Co. v. United States*, No. 8:23-MC-0014-WFJ-SPF, 2023 WL 7411463, at *6 (M.D. Fla. Sept. 22, 2023) (finding that the movant did not establish "need" for the property seized

because he did not specifically identify the materials that he required). Outlaws therefore fails to meet the second *Richey* factor.

### 3. Outlaws Fails to Meet Its Burden to Establish Irreparable Injury from Denial of the Return of the Seized Materials and Weapons.

An injunction is a forward-looking remedy meant to prevent irreparable harm. To get one, a plaintiff must show that such harm is "likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Supreme Court has long held that a plaintiff's past exposure to illegal conduct does not establish a present case or controversy for injunctive relief if it is unaccompanied by any continuing, present adverse effects. *Lyons*, 461 U.S. at 102. Although Outlaws argues that the seizure of club insignia and weapons infringes on its members' constitutional rights, it fails to allege any non-speculative harm. *See Siegel*, 234 F.3d at 1177 (rejecting argument that a violation of constitutional rights constitutes irreparable harm). The federal warrant does not prohibit any Outlaws member from wearing club insignia, associating with other members, or from owning lawful weapons. Outlaws' members remain free to express and associate and bear arms as they please—they just have to use outfits, knives, guns, books, etc. that were not seized as part of an ongoing criminal investigation.

16

### 4. Outlaws Fails to Meet Its Burden to Establish that There is No Other Adequate Remedy for Redress.

The last *Richey* factor asks "whether the plaintiff has an adequate remedy at law for the redress of his grievance." 515 F.2d at 1244. Here, the federal warrant was authorized by Judge Adams, who found the warrant supported by probable cause. Although "any subject of a search warrant would like all of his property back before the government has a chance to use it," *Trump*, 54 F.4th at 700, "[i]f there has been no constitutional violation—much less a serious one—then there is no harm to be remediated in the first place[,]" *id.* at 701. Here, to the extent that items belonging to specific members were seized and are no longer needed as evidence and are not contraband, those members can initiate a civil action seeking return of their property or contest any future forfeiture proceeding. And if criminal proceedings are instituted against any member, he or she will have an adequate remedy to challenge the search, including filing a motion to suppress any purportedly improperly seized evidence, and, unless the evidence is subject to forfeiture, will have access to the seized items once any criminal proceedings conclude.

## III. Outlaws Fails to Establish That It or Its Members Face Any Imminent, Irreparable Harm in the Absence of an Injunction.

As explained above, there has been no violation of the constitutional rights of Outlaws or its members. Outlaws likens the seizure of expressive materials and weapons to obscenity to argue that any seizure is a violation and that said violation creates imminent, irreparable harm. Not so. Eleventh Circuit precedent does not

support the position that a past violation creates imminent harm. *See, e.g.*, *Cunningham v. Adams*, 808 F.2d 815, 821-22 (11th Cir.1987) (affirming denial of preliminary injunction in action alleging Fourteenth Amendment violations, and finding no abuse of discretion in district court's rejection of the plaintiff's argument that "irreparable injury will be presumed where there has been a violation of substantive constitutional rights"); *see also Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction."). The only areas of constitutional jurisprudence where the Eleventh Circuit has said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285 (citing *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir.1983) and *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)); *see also Hohe*, 868 F.2d at 72-73 ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits. Rather, . . . it is the 'direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury.'") (quoting *Cate*, 707 F.2d at 1188). This is not such a case, and Outlaws fails to show that it will suffer an irreparable harm that is "neither remote nor

18

speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176 (internal quotation marks omitted).

## IV.     The Equities and Public Interest Do Not Favor an Injunction.

The public has an interest in law enforcement entities continuing to investigate and collect evidence of criminal activity and prosecute crime. Here, Outlaws requests that the Court enjoin DOJ and ATF from obtaining and executing future search warrants against it. What it seeks, effectively, is to disrupt federal investigations and criminal proceedings against it and its members. But efforts to enjoin federal criminal investigations are disfavored. *See Deaver*, 822 F.2d at 69-71 (affirming trial court's denial of preliminary injunction in federal civil suit sought to halt alleged investigation under Federal Ethics in Government Act) (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *Manafort v. U.S. Dep't of Just.*, 311 F. Supp. 3d 22, 26 (D.D.C. 2018) ("[A] civil case is not the appropriate vehicle for taking issue with what a prosecutor has done in the past or where he might be headed in the future. It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal."); *Broussard v. Hollenhorst*, No. 22-cv-0342 (SRN/ECW), 2022 WL 748470, at *5 (D. Minn. Mar. 11, 2022) (dismissing plaintiff's complaint to extent it sought to enjoin federal criminal prosecution), *aff'd*, No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022).

19

Outlaws has an adequate remedy at law and cannot use a civil suit to enjoin current and future federal criminal investigations.

## CONCLUSION

WHEREFORE, Defendants ATF and DOJ respectfully request that Plaintiff's Motion for Preliminary Injunction be denied and this action dismissed.

## A.I. CERTIFICATION

The undersigned hereby certifies that no generative AI was used in the drafting and preparation of the foregoing filing.

Dated: August 7, 2026                    Respectfully submitted,

                                        GREGORY W. KEHOE
                                        United States Attorney

                                        */s/ Katherine R. Branch*
                                        KATHERINE R. BRANCH
                                        Assistant United States Attorney
                                        USA No.: 235
                                        300 North Hogan Street, Suite 700
                                        Jacksonville, FL 32202-4270
                                        Telephone No. (904) 301-6354/6300
                                        Email: Katherine.Branch@usdoj.gov
                                        *Attorneys for Federal Defendants*