UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMERICAN OUTLAWS ASSOCIATION d/b/a THE OUTLAWS MOTORCYCLE CLUB, INC.,

Plaintiff,

v. Case No. 3:26-cv-01549-WWB-SJH

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, by and through ROBERT CEKADA in his official capacity as Director of the BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.

Defendants.
_________________________________/

# MOTION TO DISMISS

Defendants the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Department of Justice ("DOJ") (collectively, the "Federal Defendants"), through undersigned counsel, move to dismiss Plaintiff's Complaint (Doc. 1) for lack of subject-matter jurisdiction and for failure to state a claim.

## LEGAL STANDARD

### I. Lack of Jurisdiction.

If a plaintiff fails to sufficiently allege the basis for the court's subject-matter jurisdiction over a claim, then the court must dismiss the claim under Fed. R. Civ. P. 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994). A defendant may make a

facial challenge to the sufficiency of a pleading's jurisdictional allegations, which is resolved on the basis of the complaint. *See Koury v. Sec'y, Dep't of Army*, 488 F. App'x 355, 356 (11th Cir. 2012). On a factual challenge to subject-matter jurisdiction, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). On a factual challenge, the court "may consider matters outside the pleadings and is free to weigh the evidence concerning jurisdiction so long as the issues do not implicate the merits of plaintiff's action." *Gabriel v. United States*, No. 3:06-CV-917-J-32HTS, 2009 WL 22289, at *2 (M.D. Fla. Jan. 2, 2009).

**II. Failure to State a Claim.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard

'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ARGUMENT

### I. The Court Lacks Jurisdiction Over This Action.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994) (internal citations omitted). Because federal courts lack general jurisdiction, it "is to be presumed that a cause lies outside" the courts' "limited jurisdiction." *Id.* at 377. The "burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

Exercises of equitable jurisdiction should be "exceptional" and "anomalous." *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974).[1] Circuit precedent has

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all published cases of the former Fifth Circuit decided prior to the close of business on September 30, 1981).

limited equitable jurisdiction with a four-factor test set out in *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975). As discussed below, Outlaws cannot meet that test. Therefore, the Court should decline to exercise its equitable jurisdiction over this matter.

## II. Outlaws Lacks Article III Standing.

Article III of the Constitution limits the Court's jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. "Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018). "A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, (2008) (citations and quotations omitted). The central question asked by the standing doctrine is "whether [this] litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The party invoking the Court's jurisdiction bears the burden of establishing standing. *Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1201-02 (11th Cir. 2018).

It is not clear whether Outlaws alleges that it has individual standing, associational standing, or both. *Compare* Doc. 1 at ¶ 11 ("Subject matter jurisdiction exists under Article III because Plaintiff and its members have suffered and will continue to suffer injuries-in-fact…") *with id.* at ¶ 28 ("The Association has

standing to bring claims on behalf of its members because…"). Outlaws lacks both individual and associational standing.

**A. Outlaws Lacks Individual Standing.**

An individual plaintiff has standing under the Constitution's case-or-controversy limitation, Art. III, § 2, where "(1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff fails to establish that it has individual standing under Article III.

First, Outlaws fails to identify the injury it suffered as a result of the 2026 search of the Holland Street residence. Outlaws does not allege that it owns, possesses, leases or otherwise occupies the Holland Street residence. Outlaws does not allege that it owns, possesses or otherwise exercises dominion or control over the items seized pursuant to the 2026 federal search warrant executed on the Holland Street residence in 2026 such that it is entitled to the return of those items. Outlaws alleges that it has a First Amendment interest in displaying flags and signs

with its trademarked symbol and having its members wear clothing displaying its trademark. Outlaws may still do all of those things.

### B. Outlaws Lacks Organizational Standing.

An organizational plaintiff has standing to enforce the rights of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc.*, 528 U.S. at 181. Although organizational plaintiffs need not establish that all their members are in danger of suffering an injury, they must "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). *See also Georgia Republican Party*, 888 F.3d at 1204-05 (The Eleventh Circuit has "not relax[ed] the requirement that an organization name at least one member who can establish an actual or imminent injury."). Although the Complaint alleges that Plaintiff has standing because it and its members "have suffered and will continue to suffer injuries-in-fact[,]" Doc. 1 at ¶ 11, if fails to identify what, if any, harm any individual member has suffered or will suffer absent relief in this matter. This failure is fatal to Outlaws' organizational standing. Thus, the Court lacks jurisdiction.

### C. Outlaws Lacks Standing to Pursue Prospective Relief for Future Warrants.

Outlaws fails to establish standing with respect to its request for prospective relief in the form of an injunction barring enforcement of future warrants that purportedly violate the First or Second Amendments. Standing "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1 (2025) (Kavanaugh, J., concurring in grant of application for stay) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). A plaintiff must demonstrate a "real and immediate threat of repeated injury[,]" *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), and may not rely on a "speculative chain of possibilities[,]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

The Supreme Court's decision in *Lyons* illustrates these principles. There, police officers stopped the plaintiff for a traffic violation, seized him, and placed him in a chokehold. 461 U.S. at 97. The Court held that the plaintiff had not shown that "he was likely to suffer future injury from the use of the chokeholds" because no "immediate threat" existed that the plaintiff would be subjected to another chokehold "without any provocation or resistance on his part"—even though the police department allegedly had a policy of "routinely apply[ing] chokeholds in situations where they are not threatened by the use of deadly force." *Id.* at 105. Outlaws alleges that it and/or its members may be subject to search warrants issued in the future that may violate its and/or its members' First and Second Amendment rights, and that it has been subject to at least one search warrant in

the past, but *Lyons* and its progeny foreclose Outlaws' standing to pursue prospective relief for future warrants that are purportedly unconstitutional.

**II. Outlaws Fails to State a Claim for Relief.**

Under Fed. R. Crim. P. 41(g):

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

When a party invokes Rule 41(g) before the initiation of any civil or criminal proceedings, the motion for return of property is treated as a civil action in equity. *Richey*, 515 F.2d at 1245. Notably, the Eleventh Circuit Court of Appeals has held that a district court should invoke its equitable jurisdiction only under the "narrowest" circumstances and that "[e]xercises of equitable jurisdiction . . . should be exceptional and anomalous." *Trump v. United States*, 54 F.4th 689, 694, 697 (11th Cir. 2022). The burden of establishing this "exceptional and anomalous" jurisdiction "rests upon the party asserting jurisdiction." *Trump*, 54 F.4th at 694, 697.

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." *Douglas v. City of Jeannette (Pennsylvania)*, 319 U.S. 157, 163 (1943). The Eleventh Circuit has "developed an exacting test for exercising equitable jurisdiction over suits flowing from the seizure of property." *Trump*, 54 F.4th at 697. Under the test set forth in *Richey v. Smith*, a district court considers

four factors when deciding whether to grant a pre-indictment motion for return of property: (1) "whether the motion for return of property accurately alleges that government agents . . . displayed 'a callous disregard for the constitutional rights of [the moving party]"; (2) "whether the plaintiff has an individual interest in and need for the material whose return he seeks"; (3) "whether the plaintiff would be irreparably injured by denial of the return of the property"; and (4) "whether the plaintiff has an adequate remedy at law for the redress of his grievance." 515 F.2d at 1243-44 (internal citations and footnotes omitted). "Enveloping" those "are the basic equitable considerations of whether the [movant's] conduct and the merits of his position require judicial review to prevent manifest injustice." *In re Matter of $65,470*, 901 F.2d 1540, 1545 (11th Cir. 1990). The Eleventh Circuit has emphasized "again and again that equitable jurisdiction exists only in response to the most callous disregard of constitutional rights, and even then only if other factors make it clear that judicial oversight is absolutely necessary." *Trump*, 54 F.4th at 698.

### A. Outlaws Fails to Allege Callous Disregard of the First or Second Amendment Rights of Any Members.

"Callous disregard" is the "foremost consideration" for a court when deciding whether it may exercise equitable jurisdiction in the present context. *Trump*, 54 F.4th at 698 (quoting *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977)). When considering this factor, Eleventh Circuit precedent emphasizes the "indispensability of an 'accurate allegation' of 'callous disregard.'" *Id.* (quoting

*Richey*, 515 F.2d at 1243) (alteration adopted); *see also Hunsucker*, 497 F.2d at 34 n.10 (collecting cases). Absent that, courts rightly will not intervene in an ongoing investigation. Because the vast majority of subjects of a search warrant have not experienced a "callous disregard" of their constitutional rights, this factor ensures that equitable jurisdiction remains extraordinary. Otherwise, "a flood of disruptive civil litigation" would surely follow. *Deaver v. Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987). This restraint guards against needless judicial intrusion into the course of criminal investigations—a sphere of power committed to the executive branch.

When the Government suspects criminal activity, the nature of which is a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), any evidence relevant to prove any element of the RICO offense is subject to seizure. Here, a federal magistrate judge determined that there was probable cause to search a specific residence and to seize certain items evidencing violations of 18 U.S.C. §§ 1959 (Violent Crime in Aid of Racketeering) and 1962 (Racketeering Conspiracy), including records showing association with Outlaws, indicia of the ideology of the enterprise, cellular phones, weapons, evidence of possession or ownership of the residence, personal property belonging to several individuals, DVR systems, cameras, and digital storage devices, and items featuring Outlaws insignia. *See* Doc. 17-1, Search Warrant signed by Hon. Natalie H. Adams on

March 13, 2026.[2] Notably, Outlaws does not allege that the Government lacked probable cause. Rather, it alleges that 2026 federal warrant violates its First Amendment rights because it permits "blanket seizure of expressive materials", Doc. 1 at ¶¶ 33, 34, 35, and alleges that the 2026 federal warrant restricted it and its members' speech by depriving them of "the ability to display and wear Association-related trademarked name and symbol." Doc. 1 at ¶ 36. The Complaint fail to allege a callous disregard of the constitutional rights of Outlaws or its members.

**1. The Federal Warrant Does Not Violate Any Member's First Amendment Rights.**

It is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Under that statute, Congress has made association with an enterprise one element of the RICO offense. *See United States v. Turkette*, 452 U.S. 576, 583 (1981). That element has withstood the attack that it

[2] Although a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Here, the Complaint repeatedly references the 2026 federal search warrant, which is central to Plaintiff's claims, so the Court may properly consider the 2026 federal warrant in deciding the motion to dismiss.

unconstitutionally punishes associational status with the courts recognizing that RICO's "proscriptions are directed against conduct, not status." *United States v. Martino*, 648 F.2d 367, 380 (5th Cir. 1981), *on reconsideration in part sub nom. United States v. Holt*, 650 F.2d 651 (5th Cir. 1981), and *on reh'g,* 681 F.2d 952 (5th Cir. 1982), *aff'd sub nom. Russello v. United States*, 464 U.S. 16 (1983) (quoting *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978)). Evidence of association is subject to seizure, as is evidence of the existence of the enterprise and evidence of the pattern of racketeering activity. *See, e.g.*, *United States v. Wolfe*, No. 2:09-CR-00222-42, 2010 WL 11530893, at *1 (S.D.W. Va. June 28, 2010) ("These freedom of association concerns do not prohibit indicia warrants, nor do they substantively alter the standards for issuing and executing warrants."); *United States v. Killip*, 819 F.2d 1542, 1550 (10th Cir. 1987) (holding that warrant seeking indicia of membership in Outlaws Motorcycle Club was supported by probable cause and evidence obtained pursuant thereto was admissible in RICO prosecutions), *abrogated on other grounds by Musacchio v. United States*, 577 U.S. 237 (2016). "It would be anomalous indeed if the associational element of RICO were to remain forever unsatisfied on the basis that an otherwise constitutional search warrant could never issue because it would violate the RICO suspect's First Amendment right to free association." *United States v. Rubio*, 727 F.2d 786, 792 (9th Cir. 1983). The federal warrant signed by Judge Adams, which permitted the seizure of evidence establishing the existence of an enterprise and

of the agreement of individuals to associate with that enterprise, did not violate any member's First Amendment rights, much less callously disregard them.

**2. The Federal Warrant Does Not Violate Any Member's Second Amendment Rights.**

Outlaws fails to allege any regulation of or infringement on its members' Second Amendment rights. The Second Amendment protects the right to keep and bear arms in general; it does not protect the right to possess specific firearms confiscated by law enforcement subject to a warrant supported by probable cause.[3] Outlaws alleges that the 2026 federal warrant violated its members' Second Amendment rights because it authorized "the blanket seizure of every firearm, knife and sword found in the Clubhouse[,]" Doc. 1 at ¶ 41, and alleges that the 2026 federal warrant needed to identify the specific firearms to be seized by type, make, model, caliber, serial number or other distinguishing characteristic, *id.* at ¶ 41, and each knife by type, overall length, blade length, blade shape, color, manufacturer, model, serial number (if any), and distinguishing markings[,]" *id.* But the 2026 federal warrant was not required to specifically identify each gun, knife or sword to be seized. Rather, a warrant must particularly describe "the place to be

[3] The Complaint does not challenge the 2026 federal warrant on Fourth Amendment grounds. This is perhaps because Fourth Amendment rights are personal, and only individuals who actually enjoy the reasonable expectation of privacy may challenge the validity of a government search. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 143 (1978); *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). An individual has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). Outlaws has not asserted facts sufficient to establish it has standing to bring a Fourth Amendment challenge related to the search of the residence at issue.

searched, and the persons or things to be seized." U.S. Const. amend. IV. Regarding items to be seized, "[a] description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). "Elaborate specificity is unnecessary." *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982).

Courts have consistently rejected arguments that the seizure of firearms pursuant to a valid warrant violates the Second Amendment. "Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such." *Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020); *Crook v. San Bernardino Cnty. Sheriff's Dep't*, No. 5:22-CV-00010-JVS-SP, 2023 WL 8100579, at *7 (C.D. Cal. Sept. 30, 2023), *report and recommendation adopted,* No. 5:22-CV-00010-JVS-SP, 2023 WL 8091857 (C.D. Cal. Nov. 21, 2023) (rejecting argument that seizure of firearms violated the plaintiff's Second Amendment rights, because "the Second Amendment is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.") (internal quotation marks omitted); *Pierner-Lytge v. Mitchell*, 412 F. Supp. 3d 1012, 1020 (E.D. Wis. 2019) (finding no support for the "theory that seizure and temporary retention of individual's firearms can constitute a Second Amendment violation, even if done repeatedly."); *Rodgers*

*v. Knight*, 781 F.3d 932, 941 (8th Cir. 2015) ("Lawful seizure and retention of firearms, however, does not violate the Second Amendment."); *Bane v. City of Philadelphia*, No. CIV.A. 09-2798, 2009 WL 6614992, at *10 (E.D. Pa. June 18, 2010) ("Here, [p]laintiff's Second Amendment argument is misplaced. . . . No government official is barring [p]laintiff from obtaining a firearm and none is preventing [p]laintiff from availing himself of the procedure for the return of his firearm. Moreover, no law has been cited that infringes upon [p]laintiff's right to obtain a firearm. The Second Amendment does not bar police from seizing the items taken in this case.")

To the extent Outlaws argues that the seizure of *all* firearms or many weapons from the clubhouse was a Second Amendment violation, it is a distinction without a difference. In *Frein v. Pennsylvania State Police*, 530 F. Supp. 3d 526, 533 (M.D. Pa. 2021), *aff'd,* 47 F.4th 247 (3d Cir. 2022), the district court rejected an argument that the seizure of all of the plaintiffs' firearms, including those which did not match the weapon used in the shooting, deprived them of weapons for self-defense and infringed upon their right to keep arms. The district court stated that "whether the defendants seized one weapon or forty-six, their actions do not impose a burden on plaintiffs' right to keep and bear arms generally, but rather only their right to bear the particular weapons that were seized." *Id*. at 533.[4] Here,

[4] While many courts reject a Second Amendment claim on the basis that the firearms were seized as the result of a valid warrant, other courts have also noted that to establish a Second Amendment claim, a plaintiff "must show that he has been kept from acquiring any other legal firearms." *Aikens v. Bond*, No. CV 21-381-RGA, 2021 WL 5051134, at *4

the weapons were seized pursuant to a federal warrant supported by probable cause. The seizure of firearms, knives and swords pursuant to the federal warrant did not violate or callously disregard Outlaws' Second Amendment rights.

### B. Outlaws Fails to Allege a Possessory Interest in and Need for the Seized Items.

A motion for return of property can only be brought by the owner of property who must show a "possessory interest in the property seized" and "clean hands." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). *Cf. United States v. Cooper*, 485 F. App'x 411, 414 (11th Cir. 2012) (Article III standing to contest forfeiture depends on possessory interest, distinguishing between ownership and a lesser possessory interest); *United States v. Foster*, 635 F. App'x 818, 822 n.3 (11th Cir. 2015) ("We note that to the extent Foster alleges that the seized pistol belonged to his wife, rather than to him, and that he seeks its return on her behalf, he lacks Article III standing."). And courts that have authorized equitable jurisdiction have emphasized the importance of identifying "specific" documents and explaining the harm from their "seizure and retention." *Trump*, 54 F.4th at 699 (citing *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021)).

Here, it is unclear which items the Outlaws national group is asserting a possessory interest in on behalf of its members. *Matter of Search of Clubhouse*

(D. Del. Nov. 1, 2021). Outlaws has not alleged that any member has been kept from acquiring other firearms or weapons.

*Compound of Outlaws Motorcycle Club, located at 9371 Holland St., Jacksonville, Duval Cnty., Fla.*, No. 3:06-MJ-1099-HTS, 2016 WL 11121072 (M.D. Fla. Apr. 7, 2016) (denying Rule 41(g) motion without prejudice where it was not clear what items movant was contending he had a possessory interest in); *Matter of Search of Clubhouse Compound of Outlaws Motorcycle Club, located at 9371 Holland St., Jacksonville, Duval Cnty., Fla.*, No. 3:09-MC-27-J-32PDB, 2017 WL 8809567 (M.D. Fla. Oct. 6, 2017), *report and recommendation adopted,* 2018 WL 1832894 (M.D. Fla. Feb. 5, 2018) (club's traditions are irrelevant to property interest analysis). Outlaws fails to identify any specific items it seeks to have returned and fails to explain the harm imposed on it or its members while the Government retains the seized materials while it continues its investigation. *Times Publ'g Co. v. United States*, No. 8:23-MC-0014-WFJ-SPF, 2023 WL 7411463, at *6 (M.D. Fla. Sept. 22, 2023) (finding that the movant did not establish "need" for the property seized because he did not specifically identify the materials that he required). Outlaws therefore fails to meet the second *Richey* factor.

**C. Outlaws Fails to Allege Irreparable Injury from Denial of the Return of the Seized Materials and Weapons.**

The Supreme Court has long held that a plaintiff's past exposure to illegal conduct does not establish a present case or controversy for injunctive relief if it is unaccompanied by any continuing, present adverse effects. *Lyons*, 461 U.S. at 102. Although Outlaws alleges that the seizure of club insignia and weapons infringes on its members' constitutional rights, it fails to allege any non-speculative

harm. The 2026 federal warrant does not prohibit any Outlaws member from wearing club insignia, associating with other members, or from owning lawful weapons. Outlaws' members remain free to express and associate and bear arms as they please—they just have to use outfits, knives, guns, books, etc. that were not seized as part of an ongoing criminal investigation.

### D. Outlaws Fails to Allege that There is No Other Adequate Remedy for Redress.

The last *Richey* factor asks "whether the plaintiff has an adequate remedy at law for the redress of his grievance." 515 F.2d at 1244. Here, the 2026 federal warrant was authorized by Judge Adams, who found the warrant supported by probable cause. Although "any subject of a search warrant would like all of his property back before the government has a chance to use it," *Trump*, 54 F.4th at 700, "[i]f there has been no constitutional violation—much less a serious one—then there is no harm to be remediated in the first place[,]" *id.* at 701. Here, to the extent that items belonging to specific members were seized and are no longer needed as evidence and are not contraband, those members can initiate a civil action seeking return of their property or contest any future forfeiture proceeding. And if criminal proceedings are instituted against any member, he or she will have an adequate remedy to challenge the search, including filing a motion to suppress any purportedly improperly seized evidence, and, unless the evidence is subject to forfeiture, will have access to the seized items once any criminal proceedings conclude.

## CONCLUSION

At bottom, this action is an attempt is to disrupt federal investigations and criminal proceedings against Outlaws and its members. But “a civil case is not the appropriate vehicle for taking issue with what a prosecutor has done in the past or where he might be headed in the future. It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal.” *Manafort v. U.S. Dep’t of Just.*, 311 F. Supp. 3d 22, 26 (D.D.C. 2018). Here, Plaintiff lacks standing to bring this action, and lacks standing to seek the relief requested. It further fails to state a claim upon which relief may be granted. Defendants ATF and DOJ respectfully request that this Motion be granted and Plaintiff’s Complaint be dismissed.

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned has conferred by email with Plaintiff’s counsel Erin McCampbell Paris, who opposes the relief requested in this Motion.

## A.I. CERTIFICATION

The undersigned hereby certifies that no generative AI was used in the drafting and preparation of the foregoing filing.

Dated: August 28, 2026 Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

*/s/ Katherine R. Branch*
KATHERINE R. BRANCH
Assistant United States Attorney
USA No.: 235
300 North Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone No. (904) 301-6354/6300
Email: Katherine.Branch@usdoj.gov
*Attorneys for Federal Defendants*