**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

AMERICAN OUTLAWS ASSOCIATION D/B/A THE OUTLAWS MOTORCYCLE CLUB, INC.,

Plaintiff,

v. Case No. 3:26-CV-01549-WWB-SJH

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, EXPLOSIVES, ET AL.,

Defendants.

---

**JACKSONVILLE SHERIFF'S OFFICE**
**MOTION TO DISMISS**

Defendant, Jacksonville Sherriff's Office, by and through Sheriff T.K. Waters, in his official capacity as the Jacksonville Sheriff (JSO),[1] and pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the American Outlaws Association's Complaint. Doc. 1 (Complaint). The Association seeks declaratory and injunctive relief against JSO claiming it violated the Association's First and Second Amendment rights, as well as Florida law, when it searched property connected with the Association. For the foregoing reasons, JSO respectfully requests the Court dismiss the Complaint with prejudice.

---

[1] The law treats a claim against the Sheriff in his official capacity as a claim against the governmental entity he represents, here, the City of Jacksonville. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020) (citing *Monell v. Dep't of Social Servis. of New York*, 436 U.S. 658, 690 n.55 (1978)).

# MEMORANDUM OF LAW

## I. Introduction

The Association's Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state claims for which relief can be granted. The Association has not sufficiently alleged that it, or its members, have standing. Likewise, in seeking declaratory and injunctive relief, the Association has not pled that it is substantially likely to suffer future injuries from JSO. The Association has also failed to allege that the Court can exercise equitable jurisdiction over its FED. R. CRIM. PRO. 41(g) request. The Court, therefore, lacks jurisdiction over this matter. Nor has the Association successfully plead claims for which relief can be granted. Its allegations are insufficient to impose municipal liability on JSO and otherwise fail to meet required pleading standards. JSO therefore respectfully requests the Court dismiss all the Association's claims with prejudice.

## II. Standard of Review

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and the pleadings must contain sufficient factual allegations establishing a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[B]are assertions" which "amount to nothing more than a 'formulaic recitation

of the elements'" of a claim, should be rejected as "conclusory and not entitled to be assumed true." *Id.* at 681.

Rule 12(b)(1) subject matter jurisdiction challenges come in two forms: "facial" and "factual" attacks. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990). As relevant here, "[f]acial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). A "court assessing a facial attack on jurisdiction is to assume the allegations in the complaint are true and not look outside the pleadings and attached exhibits." *Schmidt v. Multimedia Holdings Corp.*, 361 F. Supp. 2d 1346, 1348 (M.D. Fla. 2004), *abrogated on other grounds by Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209 (11th Cir. 2005).

Similarly, in ruling on a motion to dismiss under Rule 12(b)(6), a district court is required to construe the complaint broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff. *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1278 (11th Cir. 2019). While a court must accept well-pled facts as true, it is not, however, required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 ("that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Nor is a court "required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). "Rule 8 [also] . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at 1261; *see also*

*Iqbal*, 556 U.S. at 678 ("[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 663.

To survive a motion to dismiss, therefore, a complaint must plead enough factual matter that, if taken as true, suggests the elements of the cause of action will be met. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007). However, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it . . ." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). "Thus, the well-pleaded factual allegations must be taken as true, and the alleged facts must suggest the required elements of the causes of action on which Plaintiff can recover." *Jones v. Jenne*, No. 07-60839-CIV, 2008 WL 2323890, at *1 (S.D. Fla., June 2, 2008).

## III. Summary of Allegations

The Association sued JSO, along with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Department of Justice, related to searches those entities conducted in 2022 and 2026 at property located in Jacksonville, Florida, that served as an Association clubhouse (Holland Street Property). Complaint at ¶¶2, 20-21. The Association claims the searches violated its – and its members' – First Amendment free expression and free association rights (Count I), its Second Amendment rights (Count II), and rights under Florida Statutes section 790.33 (Count III). *Id.* at ¶¶22, 26, 45-51. The Association requests that the Court declare the searches violated the First and Second

Amendments, as well as Florida Statute section 790.33. *Id.* at 14. It also asks that the Court order the return of the seized materials, and to enjoin the Defendants from enforcing warrants that violate the aforementioned laws. *Id.* at ¶¶2, 20-21; at 14.

Specifically, on June 16, 2020, JSO obtained a warrant from a Florida state court judge to search the Holland Street Property. *See* Doc. 17-4.[2] The warrant sought "CCT equipment, NVR, DVR, or other computer equipment used to store video footage from the property." *Id.* at 17-4 at 1; *see also* Complaint at ¶24. On the same day, Officers obtained a second warrant to seize six guns from the property. Doc. 17-4 at 2-5. No arrests were made. Complaint at ¶25.

Separately, on March 13, 2026, a federal magistrate judge issued a search warrant for the Holland Street Property which included, in part, records, weapons, gang indicia, photographs and cellular telephones. Complaint at ¶20; *see also* Doc. 17-1. Federal and JSO officers later participated in executing the warrant. Complaint at ¶22. No arrests have been made. *Id.* at ¶23.

## IV. Analysis

### A. The Association has failed to allege it has standing and therefore the Court lacks subject matter jurisdiction

#### 1. The Association has not sufficiently plead individual or organizational standing

The Association failed to sufficiently allege it has standing for either itself or its members, and therefore the Court should dismiss the Complaint with prejudice.

---

[2] Docs. 17-1 and 17-4 are the 2026 and 2022 warrants, respectively. The Association initially filed them under seal but incorporated them by reference into the Complaint. *See* Complaint at ¶20, n.1; ¶24, n2. Pursuant to the Court's order on August 12, 2024, *see* Doc. 41, the documents were unsealed on August 27, 2026.

To satisfy the Article III requirements for standing, a plaintiff must show

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 180-81 (2000)). Likewise,

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. WA State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Association references these general precepts, *see* Complaint at ¶29, but fails to assert facts allowing the Court to conclude that it, or its members, have standing.

The Complaint alleges no facts that allow for the plausible conclusion that because of the seizures in 2022 or 2026, the Association, or its members, are unable to exercise their First or Second Amendment rights. The Complaint also lacks any facts alleging that the Association, or its members, were the rightful owners of the property the Association is now requesting be returned. The Association must allege more to establish standing.

#### 2. The Association has not sufficiently alleged standing for declaratory or injunctive relief

The Association also lacks standing to seek declaratory and injunctive relief from JSO. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer

injury in the future." *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012). In this regard, the Association cannot establish that in seeking injunctive and declaratory relief, it is subject to a "real and immediate threat of future harm" from JSO. *See Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)); *see also J W by and Through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing *Lyons*, 461 U.S. at 102)) (a party must prove "a real and immediate—as opposed to a merely conjectural or hypothetical-threat of *future* injury." (emphasis in original)). *See also Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021); *Cousins v. Sch. Bd. of Orange Cnty., Fla.*, 636 F. Supp. 3d 1360, 1379 (M.D. Fla. 2022); *Donovan v. Rivadeneira*, 557 F. Supp. 3d 1236, 1243 (S.D. Fla. 2021).

Because the Association is seeking to enjoin "wholly prospective conduct, it follows that '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Elend*, 471 F.3d at 1207-08 (citing *Lyons*, 461 U.S. at 102). Similarly,"[i]njury in the past, . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999). *See also Walden*, 669 F.3d at 1284.

For the purposes of this standing question, the Association has not sufficiently plead a real and immediate threat of future harm, or that a "sequence of individually improbable events" would occur. *J W by and through Tammy Williams*, 904 F.3d at 1272.

The Association must not only allege that it will assuredly be subject to additional searches by JSO, but it must "also make the incredible assertion" that either JSO usually executes unlawful search and seizure warrants violating the First and Second Amendments, or, that JSO "ordered or authorized the officers to act in such a manner." *Lyons*, 461 U.S. at 105. The Association has not and cannot make such an allegation.

All of the Association's assertions are backward looking and do not demonstrate the Association is at risk of being subject to future searches by JSO that violate the First and Second Amendments or Florida Statute section 790.33. The Association claims that ATF and JSO, in executing the 2022 and 2026 warrants, violated the First and Second Amendments, and that JSO violated Florida Statute section 790.33 because of its alleged role in both searches. Complaint at 14. The Association also asks the Court to enjoin JSO from "enforcing Warrants that violate the First and Second Amendments or Florida Statute § 790.33," *id.*, and requests the Court order JSO return the seized property. None of these allegations, however, speak to an immediate threat of future harm.

By example, in *A&M Enterprises, LLC v. Houston*, 179 F. Supp. 2d 1356 (M.D. Ala. 2001), the plaintiffs sought injunctive relief prohibiting state authorities from seizing materials from their properties. *Id.* at 1359. The defendants responded that prior to any future searches or seizures of the plaintiffs' property, the defendants would first obtain search warrants. *Id.* at 1361-62. The court found there was no reason to conclude a magistrate would "grant such warrants without probable cause." *Id.* The court therefore concluded that "[a]bsent some threat of constitutional injury which is 'both real and immediate, not conjectural or hypothetical,' Plaintiffs simply have not asserted a 'case or controversy' for purposes of Article III." *Id.* at 1362 (citing *Lyons,* 461 U.S. at 102).

So too here. The Association has not demonstrated that it is at risk of JSO executing unlawful searches and seizures at the Holland Street Property. *See e.g. J W by and through Tammy Williams*, 904 F.3d at 1267-69 (no standing where over an eight-year period, the alleged unconstitutional actions occurred on average only 1.7 times a year); *Elend*, 471 F.3d at 1209 (no standing where four years elapsed since the single alleged instance of unconstitutional harm); *Wise v. Nordell*, No. 3:12-cv-01209, 2018 WL 1306333, at *6 (S.D. Cal. Mar. 13, 2018) (no standing where plaintiffs could not show they would be subject to a reissued search warrant); *Washington v. Vogel*, 156 F.R.D. 676, 680 (M.D. Fla. 1994) (no standing where four years had passed since the alleged unconstitutional harm and plaintiff had not subsequently suffered from similar harms).

At most, the Association references two separate instances where JSO was connected to searches at the Property. As such, the Association has failed to plausibly allege the "incredible assertion that" JSO officers regularly obtain and execute search warrants in violation of the First and Second Amendments, or that JSO "ordered or authorized . . . officers to act in such a manner." *Lyons*, 461 U.S. at 105. *See also Tolbert v. Trammell*, No. 2:13-cv-02108, 2014 WL 3892115, at *9-10 (M.D. Ala. Aug. 4, 2014) (plaintiff lacks standing pursuant to *Lyons*); *Am. Fed. of Labor-Congress of Indust. Organs. v. City of Miami*, No. 07-22966-CIV-UNGARO, 2008 WL 11333331, at *3 (S.D. Fla. Sept. 9, 2008) (same). *Cf. Church*, 30 F.3d at 1338-39 (plaintiffs sufficiently articulated a custom, policy, and practice to establish standing for injunctive relief where they alleged they continued to be arrested and charged by police); *Creedle v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1276, 1290 (S.D. Fla. 2018) (plaintiff can seek injunctive relief where plaintiff "is not challenging a sporadic, random practice of government officers gone

rogue, but an established, blanket County policy . . ."); *Noble v. Tooley*, 125 F. Supp. 2d 481, 484 (N.D. Fla. 2000) (injunctive relief appropriate where plaintiffs presented evidence of defendant's policy to instigate searches in violation of the Fourth Amendment).

Ultimately, the Association's lawsuit for declaratory and injunctive relief is merely a request that the Court declare JSO harmed the Association, coupled with an order that JSO prospectively exercise its search and seizure powers lawfully. "[A]n injunction that a party do nothing more specific than 'obey the law' is impermissible." *Elend*, 471 F.3d at 1209. *See also Daker v. Head*, No. 5:14-cv-138, 2019 WL 861406, at *3 (M.D. Ga. Feb. 22, 2019); *Alpert v. Bergmann*, No. 9:04-cv-02318, 2005 WL 1667668, at *1 (M.D. Fla. July 8, 2005). Similarly, a "declaration regarding a past injury is nothing more than a gratuitous comment without any force or effect." *Donovan*, 557 F. Supp. 3d at 1243.

The Association has not sufficiently alleged it suffers a substantial likelihood of injury from JSO. The Court should therefore dismiss the Complaint with prejudice.

**3. The Association has failed to allege the Court has equitable jurisdiction to address its Rule 41(g) claims**

Finally, the Court lacks jurisdiction over the Association's Rule 41(g) claim for the return of property. *See* FED. R. CRIM. PRO. 41(g) ("A person aggrieved by . . . the deprivation of property may move for the property's return."). Rule 41(g) motions are only appropriate in the context of existing criminal proceedings. *See United States v. Dean*, 80 F.3d 1535, 1542 n.6 (11th Cir. 1996); *Matter of Search of Clubhouse Compound of Outlaws Motorcycle Club, located at 9371 Holland St., Jacksonville, Duval Cnty., Fla.*, No. 3:09-MC-27-J-32PDB, 2017 WL 8809567, at *20 (M.D. Fla. Oct. 6, 2017). However, if there is no pending criminal proceeding, a court may assert jurisdiction over the matter

as a civil action in equity. *See United States v. Howell,* 425 F.3d 971, 974 (11th Cir.2005); *United States v. Martinez*, 241 F.3d 1329, 1330–31 (11th Cir. 2001); *Dean*, 80 F.3d at 1542 (1996); *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974);[3] *Times Publ'g Co. v. United States*, No. 8:23-MC-0014-WFJ-SPF, 2023 WL 7411463, at *4 (M.D. Fla. Sept. 22, 2023); *In re Sealed Search Warrant,* No. 21-MJ-8207, 2021 WL 9527724, at *1 (S.D. Fla. July 14, 2021); *United States v. Stoune*, No. 3:15-CR-89-J-34PDB, 2018 WL 7020873, at *6 (M.D. Fla. Sept. 11, 2018), *report and recommendation adopted*, No. 315CR89S1J34PDB, 2018 WL 6522100 (M.D. Fla. Dec. 11, 2018), *aff'd*, No. 19-10538-HH, 2019 WL 3814583 (11th Cir. Aug. 6, 2019); *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *11 (S.D. Fla. July 23, 2013). The exercise of such jurisdiction, however, should be restrained and exceptional. *See Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022); *Martinez*, 241 F.3d at 1331 n.2; *Richey v. Smith*, 515 F.2d 1239, 1245 (5th Cir. 1975); *Hunsucker*, 497 F.2d at 32; *Times Publ'g Co.*, 2023 WL 7411463 at *4; *United States v. Dietch*, No. 6:16-CR-123-CEM-GJK, 2021 WL 5772357, at *3 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 6:16-CR-123-CEM-GJK, 2021 WL 4810920 (M.D. Fla. Oct. 15, 2021); *In re Sealed Search Warrant*, 2021 WL 9527724 at *1; *Matter of Search of Clubhouse Compound*, 2017 WL 8809567 at *20.

Likewise, "[i]t is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." *Trump*, 54 F.4th at 697 (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943)). To that end, the Eleventh Circuit "has developed an exacting test for

---

[3] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

exercising equitable jurisdiction over suits flowing from the seizure of property." *Trump*, 54 F.4th at 697. Courts should consider four factors:

> (1) whether the government displayed a "callous disregard" for the plaintiff's constitutional rights; (2) whether the plaintiff has an individual interest in and need for the material whose return he seeks; (3) whether the plaintiff would be irreparably injured by denial of the return of the property; and (4) whether the plaintiff has an adequate remedy at law for the redress of his grievance.

*Trump*, 54 F.4th at 697 (citing *Richey*, 515 F.2d at 1243-44) (quotations omitted).

At the outset, this Court lacks jurisdiction to address the Association's request for the return of property taken by JSO during the 2022 search. "If property is in the hands of state officials, the property is not within the jurisdiction of the federal court. An action for property over which the court has no jurisdiction should be dismissed without prejudice." *Stoune*, 2018 WL 7020873 at *7. The 2022 search was initiated pursuant to a state court warrant, and the Association makes no assertions that the items seized in 2022 are in federal custody.

Even if this Court had jurisdiction over the property associated with the 2022 search, the Association cannot establish the Court should exercise equitable jurisdiction over its request for the return of property seized from either search. Of utmost importance, the Complaint contains no allegations to allow for the plausible conclusion that JSO acted with callous disregard when it searched the property. This should be the "'foremost consideration' for a court when deciding whether it may exercise its equitable jurisdiction . . . ." *Trump*, 54 F.4th at 698. The Complaint alleges both searches were conducted pursuant to normally issued search warrants. Complaint at ¶¶20, 24. These allegations, accordingly, are insufficient to clear the "callous disregard" factor of the *Richey* test. *See e.g., Hunsucker,* 497 F.2d at 35 (no callous disregard where "the search in issue was

conducted pursuant to a warrant issued in the normal manner"); *Bennett*, 2013 WL 3821625 at *13 (citing 6 Wayne R. LaFave, *Search and Seizure* § 11.2(h) (5th ed.2011) ("jurisdiction is not likely to be exercised where the search in issue was conducted pursuant to a warrant issued in the normal manner").

Likewise, nothing in the Association's Complaint establishes it is the rightful owner of the seized items. The Supreme Court guides that property should be returned to "the *rightful owner* or his designee." *Henderson v. United States*, 575 U.S. 622, 625–26, (2015) (emphasis added). *See also Matter of Search of Clubhouse Compound*, 2017 WL 8809567 at *20 ("Insisting on ordinary proof of ownership [is] not unreasonable."). There is no indication here that the Association is the rightful owner or designee of the seized property.

The third *Richey* factor asks whether the Association would be irreparably injured if the property was not returned. "This 'refers to circumstances in which a Rule 41[g] movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction.'" *Times Publ'g Co.*, 2023 WL 7411463 at *7. The Court should also "focus on the harmful effects the loss of the property wreaks on the movant." *Id.* at *7 (quoting *U.S. v. Search of Law Office, Residence, and Storage Unit of Alan Brown*, 341 F.3d 404, 415 (5th Cir. 2003)). Echoing arguments from above, the Association has not plausibly alleged that it is the rightful owner of the seized property. Even if it were, the Complaint is silent as to the "harmful effects the loss of property wreaks" on the Association. *Id.* Moreover, as it relates to the 2022 search, the Association has waited for nearly four years to ask for the property's return, undermining a claim of irreparable harm. *See Dietch*, 2021 WL 5772357

at *2 (court declined to exercise jurisdiction where party waited over eight years to seek equitable relief).

Finally, the Association has not alleged that it lacks "an adequate remedy at law for the redress of [its] grievance[s]." *Richey,* 515 F.2d at 1244. "An adequate remedy at law may exist even if it cannot be asserted currently, but rather only at some future date." *In re Stanford*, 68 F.Supp.2d 1352, 1356 (N.D. Ga. 1999); *see also Hunsucker*, 497 F.2d at 34 (adequate remedy at law existed where, at the time of bringing a motion for return of property, "it appeared likely that a future proceeding would be available in which [movant] could vindicate his rights"). *See also Times Publ'g Co.*, 2023 WL 7411463 at *7; *Bennett*, 2013 WL 3821625 at *15.

Should the Association or any of its members be indicted, the affected parties can challenge the search and seizure. *Times Publ'g Co.*, 2023 WL 7411463 at *7. Likewise, numerous remedies exist at state law, including replevin and a motion for return under Florida States section 933.14. *See e.g. Lambert v. Crist*, No. 8:06 CV 598 T 30TBM, 2006 WL 2375053, at *7 (M.D. Fla. Aug. 16, 2006), *aff'd*, 219 F. App'x 952 (11th Cir. 2007); *Eight Hundred, Inc. v. State*, 895 So. 2d 1185, 1186 (Fla. 5th DCA 2005); *Bolden v. State*, 875 So. 2d 780, 782 (Fla. 2d DCA 2004); *Sawyer v. Gable*, 400 So. 2d 992, 994 (Fla. 3d DCA 1981); *Golding v. Dir. of Pub. Safety Dep't, Metro. Dade Cnty.*, 400 So. 2d 990, 991–92 (Fla. 3d DCA 1981). The Association did not allege it attempted to exercise any of these available forms of relief, or that they were inadequate.

The Association's allegations are insufficient for this Court to exercise equitable jurisdiction over its Rule 41(g) claim, and therefore the Court should decline to exercise jurisdiction over the same.

### B. The Association has failed to sufficiently allege claims for which relief can be granted

#### 1. The Association has not sufficiently alleged JSO has a policy and custom of violating the First and Second Amendment when obtaining and executing search warrants

A municipality cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693-95 (1978); *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Rather, the Association must establish JSO had a policy, custom, or practice that caused the Association's constitutional harms. *See e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). It must allege sufficient facts to allow for the plausible conclusion that the Association's constitutional rights were violated, JSO had a custom or policy that permitted the violation of those rights, and that the policy or custom actually caused the violation. *See McDowell*, 392 F.3d at 1289. Nothing in the Association's Complaint or supporting materials plausibly alleges that any harms it suffered from the 2022 or 2026 searches were caused by JSO.

In particular, the Complaint contains no allegations allowing for the plausible inference that JSO has a policy, custom, or practice ratifying its officers obtaining or executing warrants that violate the First and Second Amendments. In this regard, the Association asserts that "[t]he execution of the [2026] Warrant, and the earlier execution of the 2022 Warrant, establish a custom and practice of Defendants' violation of the Association's constitutional rights." Complaint at ¶26. However, the Complaint does not clarify whether the "policy" at issue was crafted by ATF, JSO, or was some sort of hybrid, much less how a hybrid policy was established between the various Defendants. Nor does this allegation allow for the plausible inference that the two entities worked as one

and the same during either search. *Sinaltrainal*, 578 F.3d at 1260-61 (citing *Iqbal*, 556 U.S. at 678-81 (detailing distinction between possible and plausible allegations); *Twombly*, 550 U.S. at 544 (same)).

The Association's assertions in paragraphs 37 and 44 of the Complaint also fail to lay out plausible allegations regarding JSO's purported unconstitutional policies, and do not support the suggestion that JSO and ATF collectively fashioned an unconstitutional pattern or practice. The Complaint also provides nothing to suggest that JSO had a policy and custom of participating in the execution of federal warrants that were void at their inception and therefore violated Florida Statute section 790.33. Complaint at ¶49.

At best, the Association's allegations regarding JSO's policies and customs are conclusory and therefore "insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at 1261; *see also Iqbal*, 556 U.S. at 678. Here, the Association's allegations do not go beyond "threadbare recitals," *Twombly*, 550 U.S. at 555, and thus its claims against JSO should be dismissed with prejudice.

**2. The Association has not sufficiently alleged JSO violated its First Amendment Rights (Count I)**

Setting aside the jurisdictional and *Monell* deficiencies of the Association's Complaint, the Association also fails to articulate a viable claim under the First Amendment. The Association alleges its members' First Amendment rights were violated because the 2026 warrant "restricts the Association's and members' speech by depriving the Association and its members of its ability to display and wear Association-related trademarked name and symbol." Complaint at ¶36. Yet, the 2026 warrant authorized the seizure of "indicia of ideology of the enterprise" in the Clubhouse (*Id*. at ¶ 20.3), it did not prohibit the Association's members from ever wearing any indicia of their membership.

These allegations are not supported or specific and fail to meet the high pleading standard required by *Iqbal* and *Twombly*, and it is well settled that warrants seeking indicia of membership in an organization are valid. *U.S. v. Killip*, 819 F.2d 1542, 1550 (10th Cir. 1987).

As it relates to JSO, there is only one paragraph in Count I regarding the 2022 warrant. Doc. 17-4 is a copy of the 2022 warrant which did not include any indicia of membership. Instead, the 2022 warrant only authorized the seizure of computer based equipment to store video footage from the property and very specific firearms. The only warrant that included indicia of membership in its scope was the 2026 warrant which was not obtained by or executed by JSO.

Furthermore, it is difficult to fathom what relief the Court could grant to the Association under Count 1. Even if the Association's First Amendment rights were violated by the 2022 and/or 2026 warrants, it would be impossible for the Court to enter an injunction prohibiting future warrants that may violate the First Amendment. "It is well established in this circuit that an injunction that a party do nothing more specific than "obey the law" is impermissible." *Elend*, 471 F.3d at 1209. To the extent the Association seeks "the return of any property obtained in violation of the First…Amendment," it must first establish that this Court has jurisdiction over this equitable claim. See section IV.A.3 above.

Accordingly, Count 1 against JSO should be dismissed with prejudice as to JSO for failure to state a claim for relief under the First Amendment.

### 3. The Association has not sufficiently alleged JSO violated its Second Amendment Rights (Count II)

Count 2 of the Complaint alleges the 2026 warrant authorized the "blanket seizure of every firearm, sword, and knife at the Clubhouse," Complaint at ¶ 41, and that this blanket seizure violated the Second Amendment. *Id*. at ¶ 43. *See also id.* at ¶ 24 (discussing 2022 search). These allegations are insufficient to state a claim under the Second Amendment, and accordingly Count II should be dismissed with prejudice.

While the Second Amendment protects the right to keep and bear arms, this right is not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). A police seizure of firearms pursuant to a warrant does not impose a burden on plaintiffs' right to keep and bear arms generally, but rather only a right to bear the particular weapons that were seized. *Frein v. Pennsylvania State Police*, 530 F.Supp.3d 526, 533 (M.D. Penn. 2021). The lawful seizure and retention of firearms does not violate the Second Amendment, and even the *unlawful* retention of specific firearms does not violate the Second Amendment because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms. *Rodgers v. Knight*, 781 F.3d 932, 941-42 (8th Cir. 2015); *Pierner-Lytge v. Mitchell*, 412 F.Supp.3d 1012, 1020 (E.D. Wisc. 2019).

Moreover, Courts have consistently held that the seizure of firearms pursuant to a valid warrant does not violate the Second Amendment. "The seizure of firearms pursuant to a Fourth Amendment search does not necessarily constitute a Second Amendment violation." *Crook v. San Bernardino Cnty. Sheriff's Dept.*, 2023 WL 8100579, *6 (C.D. Cal. Sept. 30, 2023) (internal citations omitted). "The mere occurrence of a firearm seizure…is not enough to establish a Second Amendment violation." *Id*. at *7 (citing *Partin v. Gevatoski*, 2020 WL 4587386, *4 (D. Or. Aug. 10, 2020)). "Rather, to state a Second

Amendment claim, plaintiff would need to allege facts – beyond whatever seizure may have occurred – that implicate her Second Amendment rights." *Crook*, at *7 (internal quotations and citations omitted). Furthermore, like here, "[n]o government official is barring Plaintiff from obtaining a firearm . . . . The Second Amendment does not bar police from seizing items . . . ." *Bane v. City of Philadelphia*, 2009 WL 6614992, *10 (E.D. Penn. June 18, 2009).

The Association has plead insufficient facts to state a claim under the Second Amendment. The Complaint alleges JSO seized weapons during a search of the Clubhouse, but there are no allegations that JSO is preventing the Association or its members from obtaining any firearms. Therefore, Count II should be dismissed with prejudice for failure to state a claim.

**4. The Association has not sufficiently alleged JSO violated its rights under Florida Statute § 790.33 (Count III)**

The Association fails to state a claim under Florida Statute section 790.33 because it does not challenge any municipal ordinance, administrative regulation, or rule adopted by a local or state government. Florida Statute § 790.33(1). The plain language of section 790.33 states that it preempts "the whole field of regulation of firearms and ammunition," and "declare[s] all ordinances and regulations null and void which have been enacted by any jurisdiction other than state and federal [jurisdictions]." Fla. Stat. § 790.33(1) and (2). In support of this count, the Association alleges that the firearms seized pursuant to the 2022 and 2026 warrants "constituted an unauthorized exercise of governmental power over firearms and exceeded any authority granted to JSO by the Florida Legislature." Complaint at ¶48. The Association also fleetingly suggests that the 2026 Warrant violated the Fourth Amendment. *Id.* at ¶47. *See also id.* at ¶51 (discussing the 2022 search). There

is no language in the statute, or in the cases interpreting it, that supports the Association's claim. Accordingly, the Association has not cleared the bar required by *Iqbal* and *Twombly*, and the Court should dismiss this claim.

Section 790.33 governs ordinances and regulations adopted by counties, cities, and towns not seizures of firearms pursuant to lawful warrants. No court has interpreted the statute to provide a cause of action to an organization whose members have had their firearms seized. Instead, every reported case has addressed whether a *local ordinance or policy* was preempted by the statute. *See Fried v. State*, 355 So. 3d 899, 903 (Fla. 2023) (finding the Legislature's express intent in enacting section 790.33 was to maintain uniform firearms laws throughout Florida and to nullify and void all ordinances and regulations not enacted at the state or federal level); *Pretzer v. Swearingen*, 394 So. 3d 175 (Fla. 1st DCA 2024) (addressing the enforceability of a rule promulgated by the FDLE); *Broward Cnt'y. v. Florida Carry, Inc.*, 313 So. 3d 635 (Fla. 4th DCA 2021) (finding that a county ordinance regulating guns was preempted by § 790.33); *State v. City of Weston*, 46 Fla. L. Weekly D813 (Fla. 1st DCA Apr. 9, 2021), *opinion approved of sub nom. Fried v. State*, 355 So. 3d 899 (Fla. 2023) (considering claims brought by municipalities and counties challenging the penalty provisions of § 790.33); *Florida Carry, Inc. v. Univ. of Florida*, 180 So. 3d 137 (Fla. 1st DCA 2015) (finding a prohibition of firearms in university housing did not violate legislative preemption of firearms).

Furthermore, the plain language of section 790.33 limits its scope to claims challenging an ordinance or regulation. Section 790.33(1), entitled "Preemption," specifically references "municipal ordinances . . . administrative regulations or rules adopted by local or state government." Section 790.33(2)(a) clarifies that it "is the intent

of this section to provide uniform firearm laws in the state; to declare all ordinances and regulations null and void . . . which regulate firearms . . . ; to prohibit the enactment of any future ordinances or regulations . . . ." Subsection three likewise refers to ordinances, administrative rules, and regulations. Finally, Section 790.33(3)(f) limits relief to those "adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order or policy."

The Association's claim, therefore, is wholly unsupported. Its argument appears to be that the 2022 and 2026 warrants were unlawful and void ab initio, and therefore, any firearms seized pursuant to those warrants represented an unauthorized exercise of governmental power and exceeded any authority granted to JSO by the Florida Legislature. Complaint at ¶48. However, the Association points to no ordinance or regulation that purports to regulate firearms in the City of Jacksonville, the existence of which would provide the only possible basis for an action under section 790.33. Rather, the Association asserts JSO acted contrary to the requirements and public policy embodied in the statute by exercising authority over the Association's members' firearms without lawful authorization. Complaint at ¶50. In this regard, it appears the Association is improperly attempting to make a Fourth Amendment challenge to the scope and validity of the 2022 and 2026 warrants through its misplaced attempt to plead a cause of action under a firearm preemption statute. Section 790.33 was created to preempt local governments from enacting and enforcing local ordinances and rules regulating firearms; it does not support a private cause of action for an organization whose members' firearms were seized pursuant to a lawful warrant.

For all the reasons above, the Association has failed to state a claim for which relief may be granted under Florida Statute section 790.33, and Count III should be dismissed with prejudice.

**V. Conclusion**

The Court lacks jurisdiction over this action. The Association has not sufficiently alleged it has standing to bring any of its claims, or that the Court should exercise equitable jurisdiction over the Rule 41(g) request. The Association has also failed to plausibly allege JSO violated its rights under the First and Second Amendments, or Florida Statute section 790.33. JSO therefore requests the Court dismiss with prejudice all of the Association's claims against it.

Date: August 28, 2026

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**
**CITY OF JACKSONVILLE**

*/s/Laura Boeckman*
Laura Boeckman – Lead Counsel
Assistant General Counsel
Florida Bar No.: 527750
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: (904) 255-5054
Facsimile: (904) 255-5199
lboeckman@coj.net; aristevski@coj.net

*/s/Mary Margaret Giannini*
Mary Margaret Giannini
Assistant General Counsel
Florida Bar No.: 1005572

*Attorneys for JSO*

**RULE 3.01(g) CERTIFICATION**

Counsel for JSO certifies that it has conferred via email with counsel for the Association, who opposes the motion.

*/s/Laura Boeckman*
Laura Boeckman – Lead Counsel

**ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION**

The undersigned certifies that no generative AI was used in the drafting or preparation of this filing.

*/s/Laura Boeckman*
Laura Boeckman – Lead Counsel