**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

AMERICAN OUTLAWS ASSOCIATION
d/b/a THE OUTLAWS MOTORCYCLE
CLUB, INC. **Case No. 26-CV-1549**

*Plaintiff*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPOLOSIVES, by and through ROBERT
CEKADA in his official capacity as Director of the
BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES; THE DEPARTMENT OF JUSTICE,
by and through TODD BLANCHE, in his official capacity
as Acting Attorney General for the DEPARTMENT OF
JUSTICE; and JOHN DOES 1-5

*Defendants*.
_______________________________________________/

**PLAINTIFF'S REPLY**

The Association submits this Reply in Further Support of Plaintiff's Time-Sensitive Motion for a Preliminary Injunction ("Motion").[1] The Federal Defendants' Opposition ("Opposition," or "Opp.") raises no meritorious issues.

**I. The preliminary injunctive relief sought is properly before this Court.**

The relief sought – a declaration that the Warrant violated the First and Second Amendments, as well as an order returning any items unconstitutionally seized – is properly before this Court. The "status quo" is the "last actual, peaceable uncontested status which preceded the pending controversy." *Am. Soccer League, LLC v. U.S. Soccer Fed., Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Critically, "require[ing] a party who has recently disturbed the status quo to reverse its actions . . . restores, rather than disturbs, the status quo." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc). Here, the status quo is the status of the parties ***prior to*** execution of the Warrant, at which time, the Association and its members possessed their protected materials. Restoring the status quo is properly before this Court.[2]

**II. This Court has jurisdiction over this action.**

The Federal Defendants have not provided a single case that precludes this Court's jurisdiction over an action seeking the return of protected materials seized in violation of the constitution. To the contrary, the Supreme Court has instructed courts to

---

1 All terms defined in the Motion will be used herein.

2 Courts should err on the side of preventing additional harm, even if that means changing the status quo. *See Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974); *see also H.C.R. v. Mullin*, 825 F. Supp. 3d 1267, 1294-1307 (M.D. Fla. 2026) (granting preliminary injunction requiring federal defendants to change their policies concerning detainees prior to final resolution of action).

intervene. Otherwise, the "unrestricted power of search and seizure could also be an instrument for stifling liberty." *Marcus v. Search Warrants*, 367 U.S. 717, 729 (1961). For this reason, courts have exercised their jurisdiction in this very instance – when a civil plaintiff seeks the return of property seized under a warrant that violates the First Amendment – even when the plaintiff is the subject of an ongoing RICO investigation. *See, e.g.*, *White Fabricating Co. v. United States*, 903 F.2d 404, 407-08 (6th Cir. 1990).

## III. The Association has standing on behalf of itself and its members.

An association has "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Nonprofit corporations, like the Association, possess the First Amendment rights. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342 (2010); *African People's Ed. & Def. Fund, Inc. v. Pinellas Cnty.*, ___ 4th ___, 2026 WL 2178963, at *6 (11th Cir. July 29, 2026). Here, the Federal Defendants targeted and seized expressive materials from the Association's Clubhouse. (Docs. 17-1, -3.) That harmed the Association by subjecting it to a content/viewpoint-based deprivation of its expression materials, interference with its right to associate, and chilled its speech (Mot. 7-22), which established its injury-in-fact. *See First Choice Women's Res. Ctrs, Inc. v. Davenport*, 608 U.S. 174, 189 (2026); *Primera Inglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1304 (11th Cir. 2006). Moreover, the Association established organizational standing. It alleged harm to members and established specific harm to one member. (Doc. 52-2 ¶¶ 2-6.) That is all that is required. *See Fla. State. Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008).

## IV. The Association has standing to seek prospective relief.

The Association has standing to seek prospective injunctive relief barring future unconstitutional warrants because the risk of future harm is concrete. A defendant's willful violation of a plaintiff's First Amendment rights, the refusal to remedy the violation, and actions that chill speech all support standing for prospective relief. *See, e.g.*, *Lutrario v. City of Hollywood*, 683 F. Supp. 3d 1361, 1370-72 (S.D. Fla. 2023) (granting preliminary injunction barring enforcement of an antisolicitation law). Each of those factors is present here. (*E.g.*, Mot. 7-22; Doc. 52-2 ¶¶ 2-6.)

The risk of a governmental actor engaging in future unconstitutional actions is not speculative when the history between the parties shows that the violation at issue was not a one-off interaction. *See Bischoff v. Osceola Cnty.*, 222 F.3d 874, 883-85 (11th Cir. 2000) (concluding plaintiffs had standing for prospective relief because they engaged in handbilling, knew police arrested others for handbilling, and intended to continue). Here, too, rather than a one-off violation, the Warrant it is just the most recent example of the Federal Defendants engaging in unconstitutional action against the Association and its members based on the purported "expert" opinions of an ATF employee, Jeremy Scheetz, who will say anything to deprive the Association's members of their rights. In this latest iteration, ATF sought a Warrant that is unconstitutional on its face for at least ten reasons.[3]

As detailed elsewhere (Doc. 52 at 8-11), Mr. Scheetz's theories penalize members for exercising their First and Second Amendment rights. He has said, under oath, that

---

[3] In addition to obvious First and Second Amendment violations, the face of the Warrant violates the Fourth Amendment. However, those claims are not included here because they are not ripe. Should they become justiciable, the Warrant will be challenged under the Fourth Amendment, not only for its facial violations, but also through a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

they are criminals because (i) they wear the Association's symbol which he perceives as violent, even though law enforcement motorcycle clubs wear far more violent symbols; and they exercise their right to permitless open carry in Florida. (*E.g.*, Doc. 52-3 at 13-17, 32.) His theories about their institutional commitment to violence in furtherance of the Association – which he was unable to establish with anything other than sporadic incidents involving a small number of members mostly decades ago – deprived a member of his liberty for over two years and placed him at risk of loss of life. (Doc. 15 at 5-6.)

**V. The Association has a possessory interest in the seized items.**

A plaintiff establishes a possessory interest when there is proof that the plaintiff had "actual possession of the [seized items] at the time of their seizure." *United States v. Cooper*, 485 F. App'x 411, 414 (11th Cir. 2012). The government's own records show that the Association possessed seized items (Doc. 17-3), as did Mr. Platas (Doc. 52-2 ¶¶ 2-4). The Association seeks the return of all protected materials seized – as described in the Warrant Return. (Doc. 51-1 ¶ 6.) Moreover, possession is irrelevant declaratory relief.

**VI. There is no other adequate remedy for redress.**

Contrary to the government's suggestion, a plaintiff buying new stuff is not a remedy for the unconstitutional seizure of protected materials. Further, this action is the only avenue to challenge these ongoing constitutional violations. When expressive materials are seized pursuant to a warrant, even one to "preserve evidence for trial," "there must be an opportunity for a ***prompt*** postseizure judicial determination" that the expressive materials fall outside the protections of the First Amendment. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873 (1986). This action provides that "prompt" determination.

**VII. The Association established the callous violation of constitutional rights.**

The government ignored its constitutional obligations when it sought and executed the Warrant, which is facially invalid. (Mot. 7-22; Doc. 52 at 12-20.) Rather than address these controlling principles, it has provided untenable excuses. First, claiming that the Warrant targeted "conduct," not expression (Opp. 10), is no defense at all. "[W]hat matters is not how a government describes its" enforcement actions, but whether it "regulates speech." *Chiles v. Salazar*, 607 U.S. ___, 146 S.Ct. 1010, 1023-24 (2026). Here, the government targeted speech. Its own records show that it removed large quantities of protected expression from circulation based on content. (Doc. 17-3.)

Second, the government's cases on the right to associate are irrelevant. They addressed searches impacting the right to associate with a very different type of organization – secretive mafia-like enterprises.[4] In contrast, the Association is registered with the IRS, has a trademarked symbol that its members proudly wear, displays signs on its clubhouses, and tells the world about itself on its public-facing website. (Doc. 1 ¶¶ 15-18.) Also, Mr. Scheetz attends the Association's major events, takes pictures of members, talks to them, and enters their information into his database. (Doc. 15-2 at 25-26.) The government's seizure of expressive materials that it did not need violated the First Amendment. *See Huffman v. United States*, 470 F.2d 386, 392 (D.C. Cir. 1971).

Notwithstanding Mr. Scheetz's obsessive preoccupation with Plaintiff, even if there somehow were a need to obtain association evidence, when expressive materials are targeted, the government must use a scalpel, not chainsaw. It must establish that

---

[4] Additionally, those cases may no longer be good law because they rest on the assumption that such warrants target conduct when, as *Chiles* makes clear, no deference should be given to the claim of a government actor that it is merely targeting conduct.

"particular expressions . . . are outside [the First Amendment's] reach." *Bursey v. United States*, 466 F.2d 1059, 1081-82 (9th Cir. 1972) (emphasis added); *see United States v. Al-Timimi*, 164 F.4th 292, 303 (4th Cir. 2026) (expression-by-expression analysis).

Here, the Warrant authorized a fishing expedition for ***all*** expressive materials found at the Clubhouse. The Federal Defendants' authorities do not condone such a search. Instead, "[w]hen activity protected by the First Amendment becomes the subject of a criminal investigation," such as a motorcyclist's right to associate, a warrant's terms require "particular exactitude," including "specificity with respect to the . . . things to be seized" to avoid the risk of abuse. *United States v. Rubio*, 727 F.2d 786, 792 (9th Cir. 1983). The government's cases, involving searches of suspects' residences for specific items, provide no defense for the seizure of ***all*** protected expression from the Clubhouse.[5] The Federal Defendants have no serious answer for the utter lack of narrow tailoring.[6]

Similarly, the Federal Defendants showed equally callous disregard for the Second Amendment. The Warrant authorized the seizure of ***all*** firearms on site, regardless of any connection to a suspect or crime. If Governor Ron DeSantis was somehow on site with his own firearms, they, too, would have been taken. The government has no serious answer for this problem. The government's cases on seizures pursuant to ***lawful***

---

[5] The one cited case involving a search of a clubhouse, *United States v. Killip*, 819 F.2d 1542 (10th Cir. 1987), is readily distinguishable. There it was "unclear" which members of a chapter were involved with the crimes at issue which implicated the entire chapter, including its clubhouse. *Id.* at 1546. Those factors are not present here.

[6] Instead, the government portrays this action as nothing more than interference with an investigation. But, the record belies this claim. There was no resistance to execution of the Warrant. The Association filed the warrant-related materials under seal, and has not sought disclosure of the Warrant application. The Association would not have filed an action if the Warrant sought specific materials concerning specific suspects. But a search of a Clubhouse for ***all*** materials regardless of any tie to criminality is unconstitutional and actionable.

warrants are irrelevant. They address profoundly different scenarios, such as firearms taken from ***homes*** pursuant to a restraining order, to protect a suicidal woman with signs of self-harm, or pursuant to an arrest of a homeowner who pointed a firearm at a neighbor, or arrest of a suspect known to have shot and killed a state trooper. (Opp. 12-14.)

**VIII. The Association established irreparable harm.**

The loss of First or Second Amendment freedoms constitutes irreparable harm. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Baird v. Bonta*, 81 F.4 1036, 1044 (9th Cir. 2023); *Red, White & Booze, LLC v. St. Pete Beach*, 800 F. Supp. 3d 1285, 1296 (M.D. Fla. 2025) (assuming harm from violation). The Federal Defendants did not acknowledge these controlling principles, but, instead, cited cases involving irreparable-harm-analysis under other rights or statutes (Opp. at 16-19), which are not relevant here.

**IX. The remaining factors weigh in favor of relief.**

The Association established that the remaining factors weigh in favor of relief. (Mot. 18, 21-22.) The Federal Defendants ignore that the Supreme Court has expressly recognized that injunctive relief is required when First Amendment rights are violated through execution of a search warrant that is part of an investigation. *P.J. Video* says so. *See P.J. Video*, 475 U.S. at 873-74. Numerous other opinions say so. *See, e.g.*, *Fort Wayne Books v. Indiana*, 489 U.S. 46, 66 (1989). The Federal Defendants' own authority says so. *See Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987) (discussing Supreme Court opinions that "upheld federal injunctions to restrain state criminal proceedings" that "chilled exercise of First Amendment rights").

* * *

The Association respectfully requests that this Court grant the Motion.

Dated: September 21, 2026

Respectfully submitted,

/s/ Erin McCampbell Paris

Erin McCampbell Paris, Esq.
**MAURICE WUTSCHER, LLP**
New York Bar Number 4480166
50 Fountain Plaza, Suite 1400
Buffalo, New York 14202
Phone: (716) 261-4703
E-mail: eparis@mauricewutscher.com
*Admitted pro hac vice*

Luke C. Lirot, Esq.
**LAW OFFICES OF LUKE CHARLES LIROT, P.A.**
Florida Bar Number 714836
Rachel Ricks, Esq.
Florida Bar Number 1049469
2240 Belleair Rd., Suite 190
Clearwater, Florida 33764
Phone: (727) 536-2100
Email: Luke2@lirotlaw.com
rachel@lirotlaw.com
team@lirotlaw.com

Noel H. Flasterstein, Esq.
**NOEL H. FLASTERSTEIN, P.A.**
Florida Bar Number 189553
2801 Greene St., Suite 10
Hollywood, Florida 33020
Phone: (813) 919-7400
E-mail: noel@flgunlaw.com

*Attorneys for American Outlaws Association d/b/a The Outlaws Motorcycle Club, Inc.*

## CERTIFICATION REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Counsel for American Outlaws Association d/b/a The Outlaws Motorcycle Club, Inc. hereby certifies, pursuant to this Court's standing order regarding the use of generative artificial intelligence in filings as follows:

> No generative artificial intelligence tool was used to draft, edit, research, or otherwise assist in the preparation of the foregoing filing or any attachments.

Dated: September 21, 2026

Respectfully submitted,

/s/ Erin McCampbell Paris

Erin McCampbell Paris, Esq.
**MAURICE WUTSCHER, LLP**
New York Bar Number 4480166
50 Fountain Plaza, Suite 1400
Buffalo, New York 14202
Phone: (716) 261-4703
E-mail: eparis@mauricewutscher.com
*Admitted pro hac vice*

*Attorneys for American Outlaws Association d/b/a The Outlaws Motorcycle Club, Inc.*